Davis vs. City of Appleton.

---

Davis, Respondent, vs. City of Appleton, Appellant.

*February 27 — March 19, 1901.*

*Municipal corporations: Actions against: Condition precedent: Limitation: Equitable relief: Conveyances: Reference to map: Adverse possession: Streets: Surveys: Estoppel: Structures not in aid of travel: Judgment.*

1. The provision of the charter of Appleton (sec. 24, subch. V, ch. 441, Laws of 1885) that except in case of a city order "no action shall be maintained . . . against the city upon any claims or demands of any kind whatsoever, whether arising from contract or otherwise, until" such claim shall have been presented to the common council, is not a condition precedent to the right of action, but is in the nature of a statute of limitation. It is not necessary, therefore, for the plaintiff to allege compliance with the provision, but the answer must set up the failure to comply or the defense will be waived.

2. Such a charter provision is inapplicable to an action for equitable relief only, such as an action to restrain the city from erecting a water tank on land claimed by the plaintiff.

3. A conveyance of a lot "according to" a certain map cannot be held to cover an adjoining strip which, according to said map, is not a part of said lot but is a part of the street.

4. A pleading or finding stating that certain land had been in the actual and continuous occupancy and possession of the plaintiff and her grantors for more than forty years, and that they had during that time erected valuable buildings thereon, but not stating that such possession was adverse or under claim of any exclusive right, is insufficient to show title in the plaintiff by adverse possession.

5. The fact that a city had caused a survey of a street to be made which fixed its width at sixty feet, and had constructed a side-

Davis vs. City of Appleton.

walk on the line thus established, would not estop it (as against an abutting owner who had done nothing in the way of expenditure of money or erection of buildings in reliance upon the city's action) from claiming, many years after, an additional twelve feet as part of the street.

6. A city has no right to erect on a street a water tank or other permanent structure which does not aid public travel and injuriously affects the beneficial enjoyment of his premises by an abutting owner, or his means of ingress and egress.

7. In an action between a lotowner and a city involving the title to a strip of land claimed by the city as part of the street, the lotowner was found to have no title to the strip, but the evidence showed that it might be a serious question whether her grantor was not the owner thereof. *Held*, that a judgment adjudging the strip to be a part of the street and that the lotowner remove her buildings therefrom would not be justified.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed*.

This is an action in equity to obtain a perpetual injunction restraining the city from erecting a trestle work and water tank on a twelve-foot strip of land in the city of *Appleton*, which the plaintiff claims to own. The defendant, by its answer, denies the plaintiff's ownership, and claims that said strip of land is part of Johnson street, and by counterclaim asks that the plaintiff be restrained from erecting structures upon said strip or interfering with the city in its use thereof.

The evidence showed that one Amos A. Lawrence, in 1849, caused a survey and plat of certain lands owned by him in the village (now city) of Appleton to be made by H. S. Wright, and caused the same to be recorded in the register's office. In this plat appeared a certain block 29, which block includes the disputed strip in question in this action, and was represented upon the plat as shown on page 582, no distances being given.

At some time after 1849, and prior to the year 1855, it seems that Lawrence deeded to one Beach a lot forty-five

**N.**

EDWARDS    ST.

| | | | | |
|---|---|---|---|---|
| 1. | 2. | 3. | 4. | 5. |
| | | 29. | | |
| 6. | 7. | 8. | 9. | 10. |

MORRISON ST.    DURKEE ST.

**W.**                **E.**

COLLEGE    AVE.

**S.**

feet in width in said block 29, which lot took a few feet off
from the east side of lot 1 as marked upon the Wright plat;
and it further appears by inference, rather than by direct
testimony, that an alley or street running east and west was.
actually opened through the middle part of the block, but
no plat was ever filed showing the actual location of this.
street, nor does its actual location upon the ground clearly
appear. On the 13th of December, 1855, Lawrence conveyed
to Ann Toner a part of lot 1, block 29, describing the parcel
as follows: "That part of lot 1 in block 29 extending from
the lot occupied by Dr. Beach's barn westward to Morrison
street, and from the alley in the center of the block north-
ward to Edwards street." There is no evidence that Ann
Toner was ever in actual possession of the premises.

In the year 1857, Ann Toner made a deed to Ann Burke,
in which she attempted to convey the premises which had

been conveyed to her by Lawrence, describing the same as follows: "Commencing at the *northeast* corner of block 29, in the village of Appleton, as surveyed by H. S. Wright; running east, on the south line of Edwards street, sixty-seven feet; thence south, parallel to the east line of Morrison street, one hundred and forty feet, to the alley in the center of said block 29; thence west, parallel to the south line of the said Edwards street, to Morrison street; thence north, along the east line of Morrison street, one hundred and forty feet, to the place of beginning,— being the same premises conveyed by Amos A. Lawrence and wife to Ann Toner." The word *northeast* in this description should have been *northwest*, and the mistake was corrected by a deed made June 23, 1867. If the distance of 140 feet named in this deed is controlling, then Ann Burke had no title to the twelve-foot strip in question; but the plaintiff claims that the street or alley named in the deed (now known as Johnson street) was in fact 152 feet distant from Edwards street, and that the lot deeded by Ann Toner to Ann Burke ran to said street. Apparently there was a mistake made as to the number of feet of land in the block north and south amounting to twelve feet.

In 1883, Ann Burke conveyed the premises by the same description to John Loesselyong, who conveyed the same in 1888 to Gilmore and Harriman, and in 1891, by mesne conveyances with the same description, the title became vested in Frederick Harp, Sr., and Frederick Harp, Jr., who gave a mortgage thereon to John Stephens, which mortgage was foreclosed, and the property sold to him, by the same description, in the year 1895. On February 9, 1900, Stephens executed a land contract or bond for deed for the premises to the plaintiff, *Ellen Davis*, in which the land to be conveyed was described as follows: "The south one hundred ten and a half feet of the west sixty-seven feet of lot number 1, in block 29, of the Appleton plat, according to John Stephens map of the said city of *Appleton* for 1872."

Davis vs. City of Appleton.

It appears that in the year 1872 the city of *Appleton* caused a plat and map of the city to be made and recorded by one John Stephens, in which block 29 was represented substantially as follows (the representation of buildings, sidewalk, and water tank, however, not being in said map):

The question in this case is as to the ownership of the strip of land, twelve feet in width, at the south end of lot 1. The plaintiff claims to own it, but the city claims it as part of Johnson street. In May, 1900, the city authorities proceeded to erect a trestlework, eight feet in height, and a water tank upon the twelve-foot strip adjoining the plaintiff's building, the tank being intended to be used to hold

Davis vs. City of Appleton.

water for street-sprinkling purposes; and this action was brought to prevent the erection and maintenance of the same.

The evidence showed that in the year 1858 Ann Burke built a hotel building on the premises, which extended over the twelve-foot strip, and up to the line of Johnson street as it would be if it is sixty feet wide. This building was occupied by her as a hotel until 1876, when it was partially destroyed by fire. When she commenced to rebuild, she was warned by the mayor to remove the same off of the twelve-foot strip, and she complied with the demand. There is no testimony as to any claim made by her with regard to the twelve-foot strip, either before or after the fire, nor does it appear ever to have been fenced. Loesselyong, who owned and occupied the premises from 1883 to 1888, says that he used the lot for all purposes, and that there was no fence on the sidewalk line. Harriman, who was part owner from 1888 to 1891, testifies that he occupied the strip for piling purposes. Harp, who owned the premises from 1891 to 1895, built a small addition to the hotel on the twelve-foot strip, but says that he never claimed to own it, and he asked permission of the aldermen to build the addition. The foregoing is substantially all the testimony with regard to the character of the occupation.

On December 6, 1855, the trustees of the village of Appleton by an ordinance attempted to lay out a street through block 29, as follows: "The south line one hundred and twenty feet north of the north line of College avenue, and the north line one hundred and forty feet south of the south line of Edwards street, being *sixty* feet in width." It is certain that, if the north and south lines are rightly described in this ordinance, the street attempted to be laid out is actually seventy-two feet in width. There was evidence that Johnson street was surveyed and staked out by the city authorities as sixty feet in width in 1869, and a

sidewalk built by the city, the north side of which is on the sixty-foot line, but no act on the part of the owners of lot 1 seems to have been influenced by the action of the city in staking out the street and laying the sidewalk. It seems quite clear, on running through all the transactions, beginning with the deed from Lawrence to Toner, that there has been a mistake as to the distance between Edwards street and College avenue, and that the difficulty now arising has resulted therefrom.

The court found that the plaintiff owned the twelve-foot strip in question, and that the erection of the water tank prevented her beneficial enjoyment of the premises and free access to her building from Johnson street, and granted a perpetual injunction against the erection of the tank; whereupon the defendant appeals.

For the appellant there was a brief by *Thomas H. Ryan* and *Lyman E. Barnes*, and oral argument by *Mr. Barnes*.

For the respondent there was a brief by *A. M. Spencer* and *Henry D. Ryan*, attorneys, and *John Bottensek*, of counsel, and oral argument by *Mr. Bottensek*.

WINSLOW, J. The charter of the city of *Appleton* (sec. 24, subch. V, ch. 441, Laws of 1885) provides that, except in the case of a city order, "no action shall be maintained by any person against the city upon any claims or demands of any kind whatsoever, whether arising from contract or otherwise, until" such claim shall have been presented to the common council. Appellant claims that, because the complaint in this case does not allege any such presentation, this action cannot be maintained. There are two answers to the objection: First. The provision is not a condition precedent to the right of action, but is in the nature of a statute of limitation; hence it is not necessary for the plaintiff to allege compliance with it, but the defendant must allege the

failure to comply in defense, or it will waive the point. *O' Connor v. Fond du Lac, ante,* p. 253. Second. Such a provision is very plainly inapplicable to an action for equitable relief solely, like the present action. *Pinkum v. Eau Claire,* 81 Wis. 301.

The question as to whether the plaintiff owned the twelve-foot strip of land upon which the city proposed to erect the trestlework and water tank in question, or whether it was part of the public street, was the question of fact which was chiefly contested upon the trial. The plaintiff's land contract does not cover this disputed strip. The description contained in the contract covers only the south 110½ feet of the west 67 feet of lot 1, block 29, according to John Stephens's map. Reference to this map shows that, as represented thereon, lot 1 does not extend over the twelve-foot strip in dispute, and hence a conveyance of lot 1 "according to" such map cannot, under any known rule of interpretation, be held to convey any part of the strip. This contract is the only paper title which the plaintiff proved. Nor is any claim of title by adverse possession available to the plaintiff. It is neither alleged in the pleadings nor found by the court. The complaint simply alleges generally that the plaintiff has title. The reply to the defendant's counterclaim alleges that the twelve-foot strip has been in the actual and continuous occupancy and possession of the plaintiff and her grantors for more than forty years, and that they have during that time erected valuable buildings thereon, and the findings contain the same statement. It is nowhere alleged or found that such possession was adverse or under claim of any exclusive right, nor would the evidence justify such a finding, and, as this element is necessary in order to create a title by adverse possession, it is evident that the question of such title is not in the case.

But it is claimed that the city is estopped from now claiming that the twelve-foot strip is a part of Johnson street.

We have found no evidence that would justify such a conclusion. It is true that there was evidence tending to show that the city in 1869 caused a survey of the street to be made, which survey probably fixed the supposed width of the street at sixty feet, and constructed a sidewalk on the line so surveyed, but nothing appears to have been done by the plaintiff or her grantors in the way of expenditure of money or erection of buildings in reliance upon the city's action. There are no circumstances such as were proven in the cases of *Paine L. Co. v. Oshkosh*, 89 Wis. 449, and *Reuter v. Lawe*, 94 Wis. 300. The testimony necessary to establish an estoppel against the city in cases of this nature must be clear and distinct, and of such a character as to amount to a fraud to permit the city to claim otherwise. *Ashland v. C. & N. W. R. Co.* 105 Wis. 398. The findings, therefore, which determine that the plaintiff has title to the twelve-foot strip in controversy, and that the city is estopped from claiming the same to be a part of the street, must be and are distinctly overruled.

This determination, however, does not militate against the correctness of the judgment enjoining the city from entering on the strip for the purpose of erecting the water tank and maintaining the same. The plaintiff's rights as equitable owner under her contract up to the line of the twelve-foot strip are undisputed. If the twelve-foot strip be a part of the street (as between her and the city), still the city has no right to erect a permanent structure thereon, which does not aid public travel and injuriously affects her beneficial enjoyment of her premises or her means of ingress or egress. *La Crosse City R. Co. v. Higbee*, 107 Wis. 389.

We construe the judgment as simply enjoining the city from appropriating the twelve-foot strip for the purpose of erecting a water tank thereon, and from using or maintaining the same, and, so construing it, there seems no doubt of its correctness, notwithstanding the plaintiff has not shown herself to be the owner of the strip.

The appellant, however, contends that it is entitled to judgment upon its counterclaim compelling the plaintiff to remove so much of her building as stands on the twelve-foot strip, and enjoining her from erecting any further structures thereon.    The conclusions which we have reached, however, forbid such a judgment.    It is true we have found that the plaintiff has no title to the strip, but we have not found that the strip is a part of the street.    The parties necessary to the determination of that question are not before the court.    The evidence shows that it may be a serious question whether Stephens, the plaintiff's grantor, is not the owner of the twelve-foot strip.    He is not before the court, no judgment here would conclude his rights, and we do not feel that we would be justified in adjudging that the twelve-foot strip is a part of the street and that the plaintiff should remove her building, when the question as to Stephens's title to the strip has not been determined.

*By the Court.*— Judgment affirmed.