BUNKER and others, Respondents, vs. CITY OF HUDSON, Ap- pellant.

*April 19—May 10, 1904.*

*Municipal corporations: Torts: Presentation of claim when not a condition precedent to action: Charter construed: Pleading: Grading streets: Invasion of abutting land: Liability: Damages: Evidence: Effect of recovery.*

1. A charter provision that no action in tort shall be maintained against the city unless a claim was presented to the council within ninety days after the happening of the tort alleged, does not, as to common-law causes of action, make such presenta- tion of claim a condition precedent to the right of action. It merely postpones the right to sue until the claim is presented, and, as a limitation, bars the right if the claim is not presented within the time prescribed. Presentation of the claim need not, therefore, be alleged in the complaint in such a case, and the objection that no claim was presented, if not raised by proper pleading, is waived.

2. Where a city council ordered a street graded to the established grade by the street commissioner, within whose charter functions such work fell, and he did the work so as to bring the surface of the street to grade for its full width, whereby, there being no retaining wall, the filling extended upon the adjoining premises, the city is liable for proximate damages resulting to the land thus invaded.

3. Although the specific act of placing earth upon the adjoining land was unlawful and unauthorized, it was nevertheless the act of the city, for which it is responsible, since it was done in the course and as a part of the good-faith performance of the work of grading under the general authority of the commissioner to act for the city in that behalf.

4. Authority and direction to the street commissioner to grade a principal city street to the established grade would seem to require that the entire surface of the street be brought to such grade, and the city, having admitted by answer that the work done in that way was done "as required by law," cannot be heard to assert the contrary.

5. Evidence as to the cost of removing the earth placed on plaintiff's lot and of building a retaining wall to uphold the street to its full width was admitted, but the jury were carefully instructed that it was admitted merely as a limitation of damages, which were to be measured by the diminished value of the land by reason of the trespass, but not to exceed the cost of such removal and wall. *Held*, that the admission of such evidence was not prejudicial to defendant, the other evidence tending to establish a depreciation of the land largely in excess of such cost and of the amount awarded by the jury.

6. The recovery in such case of the depreciation in value, limited to the cost of retaining wall and removal of earth, would give defendant the right to have the earth remain as a support to the street unless plaintiffs should exercise their choice to build the wall at their own expense, in which latter case they must, at their peril, so construct the wall as to furnish safe and perfect support for the street for its full width at the established grade.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action of trespass, for that the city of *Hudson,* under its general power over its streets, by resolution of its common council proceeded to grade Third street according to the established grade, and directed the street commissioner and the

city surveyor to have such grading done. They accordingly graded the street to the established grade to its full width on top. In front of plaintiffs' premises this involved a fill of from seven to ten and one half feet, and the natural slope of the earth carried the foot of the grade some fifteen feet onto the plaintiffs' lot, which could, of course, have been avoided by a proper retaining wall wholly within the limits of the street. The natural effect of the elements was to extend this invasion to some extent, and to wash the earth over still other portions of the lot, for which damages were claimed. The jury returned a verdict in favor of the plaintiffs for $450, from which the defendant appeals.

*A. J. Kinney,* city attorney, for the appellant.

For the respondents there was a brief by *John W. Bashford* and *Spencer Haven,* and oral argument by *Mr. Haven.*

Dodge, J. A preliminary question raised by an assignment of error in overruling defendant's objection to any evidence under the complaint, based on the claim that there is no sufficient allegation of a presentation of this claim to the common council as required by the charter, challenges our attention to a series of statutes regulating the liability of municipal corporations and the method of enforcement of that liability; also the decisions under those statutes, by which are brought into complication with them certain statutes requiring notice to one claimed to be liable for certain torts, whether individual or public corporation. Much confusion seems to exist in the brief of appellant's counsel, arising out of imperfect analysis of the functions of these various statutes, and out of certain supposed analogies, which, upon examination, will be found not to exist. The charter of the city of *Hudson* contains merely the provision that no action in tort shall be maintained against the city of *Hudson* unless a statement in writing, signed by the person injured, of the wrong and circumstances thereof and amount of damages claimed

shall be presented to the common council within ninety days
after the occurring or happening of the tort alleged. It does
not contain those provisions which have been considered in
several city charters—notably those of Ashland and Osh-
kosh—and which are contained in the general city charter,
providing that the disallowance of a claim by the council shall
.be conclusive and a bar to any suit whatever except by the
method of appeal. The trial court held that the absence of
presentation of such a claim could not be taken advantage of
except by demurrer or answer, for the reason that it went
only to the capacity of the plaintiffs to sue, and hence over-
ruled the objection. Appellant contends that such presenta-
tion is by the statute made a condition precedent of the exist-
ence of any right of action, and is therefore a fact essential
to the existence of a cause of action, and also to the jurisdic-
tion of the court over the subject matter, the absence of which
may, under familiar rules, be raised at any time at the trial
and is never waived.

Among the cases cited by counsel are some of those deal-
ing with the requirement of sec. 1339, Stats. 1898, requiring
for the maintenance of actions arising under that section that
notice within a specified time be given to the municipality
sought to be charged. Under this section and similar charter
provisions it has always been held that compliance with that
requirement is a fact essential to the existence of any right
to damages whatever; that such a right, having no existence
at common law, but depending on the statute for its creation,
is also dependent upon the performance of all the statutory
steps required. This on the principle that the legislature,
in granting a new right, was presumed to impose, as a con-
dition precedent to the efficacy of that grant, all the steps pre-
scribed (*Daniels v. Racine,* 98 Wis. 649, 74 N. W. 553; *Mc-
Keague v. Green Bay,* 106 Wis. 577, 82 N. W. 708); hence
that the complaint was obnoxious to general demurrer which
failed to allege the giving of such notice. Later a policy was

adopted by the legislature of requiring a similar notice to be given by those who claimed to have suffered personal injuries at the hands of individuals or private corporations, which was embodied in sec. 4222, Stats. 1898, relating to the limitation of actions, by use of words almost identical with those contained in sec. 1339. Ch. 304, Laws of 1897. The first cases decided under this statute assumed complete analogy between the new enactment and that involved in sec. 1339, and applied the same rule, to the effect that it was a condition precedent to the existence of the right of action, and therefore the giving of the notice must be alleged in the complaint, and absence of such allegation might be taken advantage of at any time and not necessarily by special demurrer or answer. *Weed & G. Mfg. Co. v. Whitcomb,* 101 Wis. 226, 77 N. W. 175; *Ryan v. C. & N. W. R. Co.* 101 Wis. 506, 77 N. W. 894. The falsity of this analogy, however, became apparent upon reflection that the right of one suffering personal injury by the tort of another did not arise from statute, but out of the rules of the common law; that, since the legislature did not give the right, there was no reasonable inference that such a statute intended to create a condition of its existence; and, especially, as the enactment was embodied in the statute of limitations, it was concluded that the purpose of the legislature was no greater than in enacting other burdens upon the remedy for existing rights. Hence it was decided that as to those rights of action which existed at common law, and not by virtue of any statute, this requirement of notice within a given time was merely a statute of limitations barring the right of action in case the notice were not given within such time. *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301, 78 N. W. 412; *Meisenheimer v. Kellogg,* 106 Wis. 30, 33, 81 N. W. 1033. From the conclusion then reached there has been no intentional deviation since, except perhaps the holding that, while this is a statute of limitations by which the claim is barred, it is not a statute limiting the

time within which an action may be commenced, and therefore the objection to the failure of notice, even if apparent on the face of the complaint, cannot be raised by demurrer, since sec. 2649, Stats. 1898, authorizing demurrer, is by its terms confined to the ground that the action is not commenced within the time limited by law. We may with some confidence believe, therefore, that the rules governing the method of raising the objection of noncompliance with statutes merely requiring that a notice be given within a certain time after the happening of an event are reasonably well settled, so that counsel need not go astray with reference thereto.

But there is another class of enactments confined to municipal corporations requiring generally as a condition to suit against them upon certain rights of action the presentation of the claim to the corporation itself before action can be brought. These provisions, many of which are contained in special charters, vary, but apparently fall into two general classes: First, that which is illustrated by the general charter law (secs. 925—58 to 925—60, Stats. 1898), where not only is a presentation required, but it is provided that disallowance shall be final and conclusive and a complete bar to any action brought in the ordinary form; preserving, however, a method of reaching the courts by appeal from the disallowance. The other class includes those provisions which are more similar to sec. 824, Stats. 1898, which from early times has provided with reference to towns that no suit should be brought *until* the claim had been presented to the town board of audit, but contained no prohibition against suing the town in the ordinary form after such presentation.

As to the first class, the court at first, in *Sheel v. Appleton,* 49 Wis. 125, 5 N. W. 27, followed by *Benton v. Milwaukee,* 50 Wis. 368, 7 N. W. 241, held that such statutes merely postponed the right of action until the doing of the event, and therefore the failure of compliance was mere matter of abatement, or, as was said in the first of those cases, mere in-

capacity of the plaintiff to sue; a remark which can hardly
stand the test of reason after what has been said as to the
meaning of that phrase in our statutes on pleading in *Mans-
eau v. Mueller,* 45 Wis. 430; *Vincent v. Starks,* 45 Wis. 458;
*Murray v. McGarigle,* 69 Wis. 483, 34 N. W. 522; *McKen-
ney v. Minahan,* 119 Wis. 651, 97 N. W. 489—where it is
pointed out that this phrase applies to some incapacity exist-
ing in the person, and not in the cause of action or the ability
of the court to entertain it. The phrase, however, is imma-
terial for the purpose of our present consideration, except as
it seems to have been adopted by the trial court and should
be corrected for sake of accuracy. The view thus expressed
in these two early cases of the force of such statutes has,
however, been entirely repudiated by this court, and com-
mencing at least as far back as *Telford v. Ashland,* 100 Wis.
238, 75 N. W. 1006, where *Sheel v. Appleton* was expressly
overruled, it has been held that the purpose of the legisla-
ture was to take away from the court itself any jurisdiction
over the subject matter of an ordinary action against such
municipalities upon the causes of action covered by such char-
ter provisions, and, as a result of that legislative purpose,
that the absence of presentation to the council and appeal
from its action in the manner specified by the statute went to
the jurisdiction of the court over the subject matter, and
could, therefore, be raised at any time, either by general de-
murrer or objection to evidence upon the trial; and that the
jurisdiction so prohibited could not be accorded to the court
either by waiver or consent. No material distinction is rec-
ognized for this question between the general city charter and
those which, like that of Ashland, contain an additional and
more emphatic prohibition against bringing any suit of any
kind against the city. *Seegar v. Ashland,* 101 Wis. 515, 77
N. W. 880; *State ex rel. Ashland W. Co. v. Bardon,* 103
Wis. 297, 79 N. W. 226; *Morgan v. Rhinelander,* 105 Wis.
138, 81 N. W. 132; *Oshkosh W. W. Co. v. Oshkosh,* 106

Wis. 83, 81 N. W. 1040; *S..C.* 109 Wis. 208, 85 N. W. 376;
*O'Donnell v. New London,* 113 Wis. 292, 295, 89 N. W. 511.
Substantially the only exception to this unbroken line of au-
thority is *Davis v. Appleton,* 109 Wis. 580, 85 N. W. 515,
where the terms of the charter were in fact within the class
just discussed, but that fact seems not to have been brought
to the attention of the court, for the decision proceeds on
the assumption that it only forbade suit until after presenta-
tion, like the class next to be considered. That case, in its,
application to charters containing the further prohibition
against any suit whatever except by appeal, was expressly
overruled in *O'Donnell v. New London, supra.*

Thus we are brought to the remaining class of statutory
provisions, which, while not attempting to take away the ju-
risdiction of the court to entertain suits in ordinary form
against municipalities, do provide that certain steps shall
be taken before suit shall be brought—usually a presentation
to the municipality, sometimes a delay of a reasonable time
thereafter. These, as has been said, were enacted for the
purpose of giving to such municipalities an opportunity to
adjust before suits are brought. It is in this category that we
must locate the provision of the charter of the city of *Hudson,*
though that contains one additional element, namely, that the
presentation must be made within ninety days after the hap-
pening of the tort. Such a provision, to wit, sec. 824, Stats.
1898, was first discussed in *Jaquish v. Ithaca,* 36 Wis. 108,
114, which was an action for injuries from a defective high-
way, created by statute, and it was held that the failure to
present to the town board of audit was mere matter in abate-
ment, and therefore could not be raised upon appeal for the
first time, and must have been taken advantage of by plea in
abatement, or possibly by motion for a nonsuit on the trial.
It must be noted, however, that this ruling was responsive to
the appellant's contention that the statute was only one of
postponement and the suit was premature. No contention

was made further than this, and the court apparently took the counsel at his word and ruled that mere prematureness was matter of abatement. That view of the statute has never again been applied in any case upon a cause of action created by statute. In *Benware v. Pine Valley,* 53 Wis. 527, 10 N. W. 695, however, in an action under a statute for injuries from defective sidewalk, it was definitely held that the presentation of the claim to the town board of audit under sec. 824 occupied exactly the same relation to the right of action as the notice required by sec. 1339; that it was a condition of the existence of a cause of action, not merely a regulation of the remedy; and that a failure to allege it could be raised either by general demurrer or, as in that case, by objection in the nature of a demurrer *ore tenus.* That case has since been followed by express citation to the proposition above stated in the following cases: *Chicago, M. & St. P. R. Co. v. State,* 53 Wis. 509, 10 N. W. 560; *Chicago & N. W. R. Co. v. Langlade,* 55 Wis. 116, 12 N. W. 357; *Wentworth v. Summit,* 60 Wis. 281, 19 N. W. 97; *Watson v. Appleton,* 62 Wis. 267, 22 N. W. 475; *Welsh v. Argyle,* 85 Wis. 307, 55 N. W. 412; *Eron v. Stevens Point,* 85 Wis. 379, 55 N. W. 410; *Flieth v. Wausau,* 93 Wis. 446, 67 N. W. 731; *Conrad v. Ellington,* 104 Wis. 367, 80 N. W. 456; and *Morrison v. Eau Claire,* 115 Wis. 538, 92 N. W. 280. Nearly all of these presented claims of statutory liability, and would seem to have established the rule, as originally adopted in the *Benware Case,* that a statute generally like sec. 824, or a charter provision like that now under consideration, must be deemed a condition imposed by the legislature upon the creation of the right, and not a mere burden imposed upon the remedy, and therefore that, like the giving of the notice in compliance with sec. 1339 and analogous statutes, the fact must be alleged and proved, and its absence may be taken advantage of like any other failure to allege or prove a fact essential to the existence of the cause of action set forth,

namely, by general demurrer or by objection to any evidence under the complaint, or motion for nonsuit.

But the cause of action here sued on is not of that class. If any is stated, it is one which arises under the rules of the common law. It is the commission of a trespass by the defendant city, acting through its officers. Hence we meet again the same distinction with which the court was concerned in considering the effect of ch. 304, Laws of 1897, and no reason is apparent why that distinction should not result in the same conclusion as to the legislative purpose, namely, that with reference to the cause of action which the legislature does not confer by its own act there is no necessary or reasonable inference that by such enactments as that now under consideration it was intended to import into the cause of action itself the taking of the prescribed steps by way of presentation to the common council. If the city committed a trespass upon the lands of the plaintiffs, the common law gave them a right, as against that city, to recover damages in the ordinary judicial tribunals. The legislature, by providing that before pursuing their remedy in those tribunals they shall give to the municipality an opportunity to settle or pay without litigation, cannot be presumed to have gone further than to merely postpone their right to commence that suit until the required act is done by them. This may be called limitation of actions, but, so far as it merely postpones the commencement of the suit, it is strictly matter in abatement. *Lombard v. McMillan,* 95 Wis. 627, 634, 70 N. W. 673. This conclusion as to common-law rights of action has the support of *Bigelow v. Washburn,* 98 Wis. 553, 556, 74 N. W. 362; *Davis v. Appleton,* 109 Wis. 580, 85 N. W. 515; and *O'Connor v. Fond du Lac,* 109 Wis. 253, 85 N. W. 327, and seems to be without antagonism from any decided case.

From the foregoing the deduction is, of course, obvious that any failure of the complaint to allege that the plaintiffs'

claim had been presented to the common council must have been raised by plea in abatement or answer. Whether, if it had been affirmatively alleged that no such presentation had ever been made, the complaint might have been obnoxious to demurrer upon any of the statutory grounds, we need not decide, for that is obviously not the case here. The charter provision contains two elements: First, that the suit shall not be maintained until the claim is filed. This, as we have already said, merely postpones the right to sue upon this common-law cause of action. The other portion requires that such filing shall be had within ninety days after the tort. That is obviously limitation of the action, as much as the requirement that a notice be served within a specified time. Either, however, must be raised by proper pleading, or it is waived by the defendant, as fully shown by the authorities already cited, and, indeed, as provided by statute. Sec. 2654, Stats. 1898. No error, therefore, was committed in overruling this objection to any evidence under the complaint, so far as based on failure of that pleading to allege presentation, if, indeed, the allegation of due presentation is not sufficient—a question, therefore, not necessary of decision.

The next general contention of the appellant, which is involved in more than one of the assignments of error, is that the facts, whether as alleged in the complaint or as proved upon the trial, do not result in liability of the city, for the reason, as broadly stated by counsel, that putting earth on plaintiffs' land was an act beyond the lawful power of the city, and therefore one which it could not do in its corporate capacity. Both allegation and proof are undisputed that the council ordered Third street graded to established grade by the street commissioner, within whose charter functions such work fell; that he did that work so as to bring the surface of the street to grade for its full width, whereby, of course, the foot of the grade necessarily extended onto adjoining premises in absence of any retaining wall or other precaution. It

is difficult to conceive a plainer case for corporate liability. In grading the street the city was doing one of the things which, as a municipal corporation, it was authorized to do. That work was done in an improper or negligent manner, so as to invade the rights of the plaintiffs, not as members of the public, but as adjoining proprietors. Toward them the city's act was not governmental, but proprietary. For proximate damage thus caused liability results according to principle, and without conflict of authority. *Hamilton v. Fond du Lac,* 40 Wis. 47; *Durkee v. Kenosha,* 59 Wis. 123, 17 N. W. 677; *Meinzer v. Racine,* 68 Wis. 241, 32 N. W. 139; *S. C.* 70 Wis. 561, 36 N. W. 260; *Addy v. Janesville,* 70 Wis. 401, 35 N. W. 931; *Hollman v. Platteville,* 101 Wis. 94, 76 N. W. 1119; *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420; *Morrison v. Eau Claire,* 115 Wis. 538, 92 N. W. 280; *Mayo v. Springfield,* 136 Mass. 10; *Hendershott v. Ottumwa,* 46 Iowa, 658; *Abrey v. Detroit,* 127 Mich. 374, 86 N. W. 785. Counsel for appellant seeks to escape this result by urging that the city did not place this earth upon plaintiffs' premises, but that such act was done by the street commissioner unlawfully, and thus as an individual. Doubtless it is true that neither the charter conferring powers on the commissioner nor the resolution of the council requiring him to grade Third street expressly authorized him to cast a shovelful of earth on plaintiffs' lot, but both conferred on him general authority to do the work of grading, and in the good-faith performance of that work he was the corporation in action. What he did the city did. Express authority to do the specific unlawful act is by no means essential. It suffices that such act occurs in the course and as a part of the good-faith performance of an authority to act for the city upon a general subject. *Thayer v. Boston,* 19 Pick. 511; *Hunt v. Boston,* 183 Mass. 303, 67 N. E. 244.

A contention that even the commissioner's general authority did not extend to grading the surface of the street to its

full width, and therefore the invasion of plaintiffs' premises was not incidental to such general authority, cannot be sustained. The authority and direction were to grade Third street according to the established grade. That language, applied to a principal city street, would seem to require that the entire surface of the street be brought to such grade in absence of any contrary suggestion. In any event, it was so graded by the commissioner, and the answer admits that such work was done by him "as required by law." Surely, the defendant cannot now be heard to assert the contrary if the words of the authorization permit such construction as to warrant the grading which the commissioner in fact did.

Error is assigned upon the admission of evidence as to the cost of removing from the land all soil cast thereon by the city and building a retaining wall to uphold the street to its full width, with the argument that these are not proper elements of plaintiffs' damage. An examination of the record, however, discloses that the court with great care, and very industriously, impressed upon the jury that this proof was admitted merely as a limitation of damages, and not as establishing any elements thereof. Proof was offered and admitted of the diminished value of plaintiffs' premises by reason of the trespass, and the court instructed them that such was the measure of plaintiffs' damage, but that, if they could remove the earth and erect a retaining wall for a less sum than they found such depreciation to be, they must limit their verdict to the lesser amount, and, on the other hand, if the depreciation of value was less than the cost of the retaining wall and the removal of the earth, they must confine themselves to the former. Clearly, this evidence, accompanied by such an instruction, instead of being prejudicial, was helpful to the defendant, for the evidence tended to establish a depreciation of the lots largely in excess of the cost of the retaining wall and of the amount finally allowed by the jury.

While not demanded by any specific assignment of error,

a cautionary suggestion is perhaps needed in this opinion as to the effect of the present verdict and judgment. The recovery of depreciated value, limited as it was to the cost of a retaining wall and removal of the earth, clearly contemplates that one or the other of those situations is going to be permanent. If plaintiffs recovered for the diminished value of their premises resulting from this wall of earth serving to support the grade of the street to its full width, then they would have received payment for the privilege of keeping the earth there. In other words, they would have, in practical effect, sold to the city an easement to that extent. Hence they would have no right to remove that earth so as to jeopardize the street or cause it to cave or wash away. Doubtless, by the limiting of their damages to the cost of a retaining wall and of the removal of the earth, they would have the right, after collection of this judgment, to exercise their choice to do such acts at their own expense, but must then at their peril so construct the wall as to furnish safe and perfect support for the street at its established grade to the utmost of its legal limits. If this were not to be the situation, then they would have been entitled to recover as damages no more than the cost of ejecting from their premises the earth which the city had cast upon it, and perhaps intermediate special damages, with the right, perhaps, to another action for trespass if it replaced the earth so as to support the highway. We find no prejudicial error in the record.

*By the Court.*—Judgment affirmed