Young v. Juneau County, 192 Wis. 646.

YOUNG, Respondent, vs. JUNEAU COUNTY, Appellant.
NECEDAH MANUFACTURING COMPANY, Respondent, vs.
SAME, Appellant.

*January 13—May 3, 1927.*

*Counties: Defective steam shovel setting fires: Liability of municipal corporation for torts: Where relation toward injured party is that of one proprietor to another: Pleading: Failure to allege corporate capacity of party: How defect is reached.*

1. A county operating a steam shovel in removing gravel and road material sold by the county, with knowledge of defects which permitted the escape of sparks therefrom, was liable for damage to adjoining premises caused by fire set by sparks from the engine, notwithstanding the governmental character of the county, the relation of the county to the adjoining owner in such case being that of one proprietor to another and not that of governor and governed.   p. 652.

2. The corporate character of a party may not be implied from the mere use of the word "company" in its name.   p. 654.

3. Failure of the complaint to allege the corporate character of plaintiff, as required by sec. 286.02, Stats., is not available on a general demurrer, but can be reached only by motion to make the complaint more definite and certain, or by special demurrer.   [The holding in *Carpenter v. McCord L. Co.* 107 Wis. 611, and *State ex rel. Green Bay G. & E. Co. v. Minahan B. Co.* 141 Wis. 400, modified.]   pp. 655, 656.

4. Courts take judicial notice that a county is one of the political subdivisions of the state.   p. 656.

APPEAL from two orders of the circuit court for Juneau county: E. W. CROSBY, Circuit Judge.   *Affirmed.*

There was an appeal from an order overruling a demurrer to the plaintiff's complaint in each case.   The cases have been considered together and will be disposed of in one opinion.   The complaints are substantially alike.

*Robert P. Clark,* district attorney of Juneau county, and *J. T. Dithmar* of Elroy, of counsel, for the appellant.

For the respondents there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *R. B. Graves.*

The following opinion was filed February 8, 1927:

ROSENBERRY, J. In the action begun by the *Necedah Manufacturing Company* the complaint was as follows:

"Plaintiff alleges:

"That at the times hereinafter stated, and for a long time prior thereto, the defendant, *Juneau County,* was the owner of a gravel pit situated within the fire limits of the village of Necedah, in said county, adjacent and adjoining the business district of said village and in close proximity to the one-story shingle-roof frame stucco building owned and occupied by the plaintiff as a manufacturing plant, situated on Main street in said village.

"That the defendant was at said times and for a long time prior thereto had been, through its agents and employees, engaged in the digging and removing for its use and for sale gravel and road-building material by means of a steam shovel operated by a hoist engine owned, operated, and controlled by said county.

"That the hoist engine used as aforesaid in the operation and control of said mechanical shovel was, at said time, and had been for many months prior thereto, defective and out of repair in that the flues, grates, and draughts were broken, worn out, and defective, and in that the same was not equipped with a spark arrester or any device calculated or intended to prevent sparks being emitted from the smoke-stack of said engine.

"That as a result of the worn-out and defective condition of said engine, great volumes of sparks were emitted at all times during the operation of said steam shovel, subjecting the adjoining property as well as all other buildings within the fire limits of said village to almost continual danger of destruction by fire.

"That the public danger created through the negligent acts of the employees and servants of said defendant was known by and repeatedly communicated to the officers of said county charged with the duties of supervising and directing the operations upon the property of said county, notwithstanding which no efforts were made to remove and reduce said hazards, or to repair or to replace said defective hoist engine, but the negligent operation of the same was continued through the season of 1925.

"Plaintiff further alleges that on the 5th day of June, 1925, while said hoist engine was being operated by defendant county in its defective and worn-out condition as aforesaid, large quantities of sparks were emitted from the smoke-stack thereof, setting fire to the one-story shingle-roof frame stucco building owned and occupied by the plaintiff as a manufacturing plant, situated on Main street in said village, in close proximity to said hoist engine, causing the complete destruction of said building and the machinery, equipment, and contents thereof.

"That plaintiff sustained damages by reason of the destruction of said property as aforesaid in the sum of twenty-five thousand six hundred eighty-eight and 38-100 dollars ($25,688.38).

"That a written verified statement of the plaintiff's claim was duly filed as required by statute with the county clerk of said county on the 2d day of November, 1925, and was wholly disallowed by action of the county board of supervisors of said county on the 21st day of November, 1925, which date is within six months from the date of the commencement of this action.

"That plaintiff is now the owner and holder of said claim and cause of action, and the full amount of said loss with interest is payable to it."

The contention of the defendant is that the complaint is grounded upon negligence; that counties are not liable for the negligence of agents and employees engaged in the discharge of a governmental function; and second, that the corporate existence of the plaintiff is not alleged as required by sec. 286.02, Stats. The demurrer raises an interesting question. For a history of the doctrine of "Government Liability in Tort," see an article by Edwin M. Borchard of Yale Law School, 36 Yale Law Journal, 1, and a discussion of the law of the subject by the same author in a series of articles, 34 Yale Law Journal, 1, 129, 229. The author says:

"The reason for this long-continued and growing injustice [exemption of governments from liability for injuries

to citizens] in Anglo-American law rests, of course, upon a medieval English theory that 'the king can do no wrong,' which without sufficient understanding was introduced with the common law into this country, and has survived mainly by reason of its antiquity. The facts that the conditions which gave it birth and that the theory of absolutism which kept it alive in England never prevailed in this country and have since been discarded by the most monarchical countries of Europe, have nevertheless been unavailing to secure legislative reconsideration of the propriety and justification of the rule that the state is not legally liable for the torts of its officers. To be sure, we profess to ease the conscience by according the injured individual an action against the wrongdoing officer—frequently a person without pecuniary responsibility—or else, under our decentralized system of administration, by permitting an action against political subdivisions of the state and local bodies and corporations for injuries inflicted when acting in their 'private' or 'corporate' as distinguished from their 'governmental' capacities. . . .

"The difficulty, of course, lies in the fact that we consider ourselves bound by the fetters of a medieval doctrine, often regarded as having the institutional impregnability of an article of faith, which never had much, if any, justification, and that legislatures have been unwilling to re-examine the whole subject from the point of view of theory and history, in order to bring the law into harmony with the practical exigencies of modern life."

In the concluding paragraph upon the law of the subject he says:

"The community will gain by promoting respect among its members for its fairness and justice and, instead of relying upon antiquated formulas to escape liability, it will meet the exigencies of modern organized life by discharging what the rest of the world recognizes as just obligations."

Whether we agree with the learned author or not, he has made a valuable contribution to the literature of the subject and pointed out many of the inconsistencies as well as injustices which result from a too rigid application of the doctrine. Happily, however, we are not left to wander un-

guided in a wilderness of authority nor required to make a too rigid application of the rule. The rule exempting governmental agencies from liability for tort has been relaxed in this state by statute. Sec. 81.15 makes municipalities liable for damage caused a traveler by insufficiency or want of repair of highways; sec. 66.07 makes counties and cities liable for mob violence, which is liability for failure to perform a purely governmental function—furnish adequate protection to life and property; from an early day the distinction between a municipality acting in a governmental and in a proprietary capacity has been recognized (see *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265, where the cases are collected and reviewed) ; and where the municipality is acting in a governmental capacity it is liable if it creates or maintains a nuisance or if the relation between the injured person and the municipality be that of one proprietor to another. The cases cannot be classified with exactness, for now one factor is emphasized and now another. Compare *Apfelbacher v. State,* 160 Wis. 565, at p. 575 (152 N. W. 144), with *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420. As was said in *Apfelbacher v. State,* if there is to be further exemption from liability it must be by way of legislative action rather than judicial interpretation. We are cited to many cases from other jurisdictions by the appellants where the distinctions made in the jurisprudence of this state have not been drawn. We do not feel called upon, however, to distinguish these cases from our own, but shall point out again the basis of the distinction which has already been made in the jurisprudence of this state. In *Matson v. Dane County,* 172 Wis. 522, 179 N. W. 774, where the authorities were carefully reviewed, it is said:

"The decisions of this court fully sustain the principle that, while a municipality is not held liable for damages resulting from mere performance of governmental functions, such exception applies only when the city's relation to the injured person is governmental, such as a traveler on the

highway, but not when its relation to the injured one is that of a proprietor."

The basis of liability in the *Matson Case* and the cases cited there does not rest upon the fact that a nuisance was maintained nor that the municipality was engaged in the discharge of a proprietary as distinguished from a governmental function, but upon the relation which existed between the party injured and the municipality. When the relation is that of governor and governed and the officer of the municipality is negligent in the discharge of his duty no liability arises, but when the relation between the municipality and the injured party is that of one proprietor to another, liability may arise. The distinction is well illustrated by the case of *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 448. In that case the city council had ordered a street graded to an established grade and specified the width. The street commissioner in carrying out the instructions of the council brought the street to grade at the width indicated; there being no retaining wall, the filling extended upon the adjoining premises and the city was held liable for the damages proximately caused thereby. The municipality was engaged in the discharge of a governmental function, but the relation of the city to the landowner was that of an adjoining proprietor, hence there was liability.

In Michigan, where the opposite doctrine prevails, the court held that a municipal corporation is not liable for the burning of property of an abutting owner by sparks from a defectively constructed and negligently managed roller with which its agents were repairing a street. The court said:

"The machine and the agents of the city were properly employed in performing a public work. This employment involved no injury to plaintiff's property. Between the performance of the work and the injury complained of were the alleged facts of improper equipment of the roller; direction and velocity of the prevailing wind; management of the

machine.   In some respects the case may be regarded as closely resembling many in which municipal liability has been judicially affirmed.   In essentials it belongs to the class of cases where the injury is the result of negligence of municipal agents employed on public work for which the municipality is not at common law liable."   *Alberts v. Muskegon,* 146 Mich. 210, 109 N. W. 262, 6 L. R. A. N. s. 1094.   See, also, *Barree v. Cape Girardeau,* 197 Mo. 382, 95 S. W. 330, 6 L. R. A. N. s. 1090 and cases cited.

So in most of the jurisdictions to which we have been referred a different theory of the law has been adopted. Hence the decisions are without applicability here.   We see no reason in justice or morals why a group should not be liable to one to whom its agents have done injury when a member of the group would be liable if he had done the same injury to another member of the group.   Multiplication of the number of those who are responsible for a wrong ought not to establish immunity.   We recognize that the rule as established in this state, if pushed to extreme limits, might produce curious results.   Suppose by the explosion of a road roller operating upon the streets, because of the negligent management of it by the municipality's servants, a traveler's load of hay is set on fire and an adjoining proprietor's building is ignited.   Apparently in one case there would be liability and not in the other because of the difference in the relationship of the two injured parties to the municipality. We are not disposed to pursue the subject farther.   The doctrine of liability of a municipal corporation in cases where the relation is that of one proprietor to another is so well intrenched in the jurisprudence of the state that it cannot be disturbed, and by this we do not indicate it should be. The trend of statute and decision seems to be in the right direction.   In this case the county of *Juneau* maintained upon adjoining premises a defective engine although repeatedly warned of the defect; its officers and agents continued to use the same with the result that the plaintiff sustained damage not as a traveler but as a proprietor.   Under

such circumstances the case is ruled by *Matson v. Dane County, supra,* and the cases there cited and considered, and the complaint must be held in that regard to state a good cause of action. It is not necessary to hold that the defendant maintained a nuisance. If as an adjoining proprietor it violated a legal duty owing by it to the plaintiff, liability follows just as in the case of *Bunker v. Hudson, supra.*

The summons was entitled "Necedah Manufacturing Company, a Corporation, Plaintiff, v. Juneau County, Defendant." This title was adhered to throughout all of the proceedings, including the notice of retainer, stipulations made between the parties, the caption to the complaint, motion papers, and the demurrer. The complaint contains no allegations respecting the corporate capacity of the plaintiff company.

Sec. 286.02 provides:

"In an action by or against a corporation the complaint must aver that the plaintiff or defendant, as the case may be, is a corporation. If it was incorporated under any law of this state that fact must be averred; if it was not so incorporated an averment that it is a foreign corporation is sufficient."

Sec. 328.31 provides:

"In actions by or against any corporation it shall not be necessary to prove on the trial the existence of such corporation unless the defendant by his answer, duly verified, shall have specifically denied that the plaintiff or defendant, as the case may be, is a corporation."

Sec. 286.02 was under consideration in *Carpenter v. McCord L. Co.* 107 Wis. 611, 83 N. W. 764. Referring to that section the court said:

"Upon full consideration, we have determined that the legislative purpose will be best subserved by taking the statute according to its letter, and holding that, in case of a suit by or against a corporation, the fact of incorporation, either under the laws of this state or under the laws of some other government, must be alleged, and that a complaint

which fails to comply with this requirement does not state the facts necessary to constitute a cause of action and is therefore obnoxious to a general demurrer on that ground."

The matter was again thoroughly considered in *State ex rel. Green Bay G. & E. Co. v. Minahan B. Co.* 141 Wis. 400, 123 N. W. 258. The conclusion reached in these cases rests upon the proposition that it impliedly appears from the name of the plaintiff that it is a corporation and under the statute the failure to allege corporate existence renders the complaint subject to a general demurrer. *Brauser v. New England F. Ins. Co.* 21 Wis. 506, is cited as authority for the proposition that it appears sufficiently from their names that the plaintiff in the case of *Carpenter v. McCord L. Co.* intended to bring suit against the corporations.

In *Brauser v. New England F. Ins. Co.* that company was named as a defendant, and the question was whether or not a notice of garnishment had been properly served. The court said:

"Nor does the affidavit state that the defendant is a corporation; but leave was given the plaintiff in the court below to amend it in that particular. The fact that it is a corporation is implied only from its name. And this, we think, is *prima facie* sufficient. If the defendant is not a corporation, as its name alone indicates, it is a matter within the knowledge of the agents or persons having charge of its business, and may be set up in the answer, if desired."

Why it should be implied that the use of the word "company" indicates a corporation rather than a copartnership it is difficult to see. While the name, the New England Fire Insurance Company, might to the average person of business experience indicate that it was a corporation because business of that type was not ordinarily carried on except by corporations, the mere use of the word "company" ordinarily has no such connotation. In this case, *Necedah Manufacturing Company,* so far as the name alone is concerned, might as well be a partnership as a corporation.

The provision of the statute relating to demurrer provides that the defendant may demur to the complaint when it shall appear upon the face thereof either (1) . . . (2) That the plaintiff has not legal capacity to sue. (3) . . . (4) . . . (5) . . . (6) That the complaint does not state facts sufficient to constitute a cause of action (sec. 263.06).

The failure of the complaint to allege the corporate existence of the plaintiff is a failure to make the capacity of the plaintiff to maintain the action appear. The name clearly indicates that it is not the name of an individual. It might be the name of a copartnershp or it might be an appropriate name for a corporation. In this case it is apparent from the title that the plaintiff *Necedah Manufacturing Company* intended to sue as a corporation. If there were some allegation in the complaint respecting the corporate existence of the plaintiff, no doubt the title might be referred to in aid of it, but no such allegation appears and there is a complete failure to comply with the requirements of the statute. It is considered that the real nature of the objection is that it does not appear from the complaint that the plaintiff has legal capacity to maintain the action. It is apparent from the name that the plaintiff is not a natural person. It does appear that it is not a partnership, for the names of the partners, in whose name the partnership must sue, are not given. If it is a corporation it does not appear whether or not it is organized under the laws of the state of Wisconsin or is a foreign corporation as the statute requires. It is much more consistent with liberal practice to hold that an omission of this sort cannot be reached by a general demurrer. It is evident from the language of the opinion in *Carpenter v. McCord L. Co., supra,* that the court was in some doubt as to the soundness of its holding in that respect. There can be no doubt that a proper allegation as to the corporate existence of a party cannot under the statute be

Young v. Juneau County, 192 Wis. 646.

dispensed with. It is considered, however, that such defect relates to the capacity of the party to sue and is not a necessary element of the cause of action as such, and therefore can be reached only by a motion to make more definite and certain or by special demurrer, and the holding in *Carpenter v. McCord L. Co.* and *State ex rel. Green Bay G. & E. Co. v. Minahan B. Co.* is modified accordingly. Under this rule the party objecting will be required to specify the grounds of his objection, and a formal defect in a pleading cannot be made to operate as a trap for the incautious and careless pleader as in this case. It does not appear that this matter was called to the attention of the court below. We are not inclined to palliate or excuse carelessness and looseness in pleadings, but the rights of parties ought not to be made dependent upon purely technical and highly artificial rules of pleading. Then, too, it is inconsistent to say that from the name the corporate character of the party appears and then to say that the pleading is defective because the corporate character is not alleged in the pleading. Were it not for the provision of the statute, no doubt the corporate capacity might be inferred from very slight circumstances, as no party would be concluded thereby, and as was intimated in *Brauser v. New England F. Ins. Co., supra,* the truth of the matter might be made to appear by subsequent pleadings. In no event would a party be concluded.

Some objection is made to the fact that the complaint fails to state that *Juneau County* is a municipal corporation. *Juneau County* is one of the political subdivisions of this state of the existence of which the court may and does take judicial notice. The objection is without merit. So held in regard to cities. See *Smith v. Janesville,* 52 Wis. 680, 9 N. W. 789.

*By the Court.*—The orders appealed from are affirmed.

A motion for a rehearing was denied, with $25 costs, on May 3, 1927.