L. E. WILLIAMS v. THE BOARD OF COUNTY COMMISSIONERS OF KEARNY COUNTY, KANSAS.

No. 11,558.* (60 Pac. 1046.)

1. LANDLORD AND TENANT—*Liability of County for Negligence.* A county which, lacking a court-house, rents a building from a private individual for county purposes, impliedly obligates itself to the lessor for carefulness and prudence in the use of it, and may enter into a written agreement of lease containing the ordinary covenants against waste, etc., and if, through the negligence of the officers charged with the duty of caring for the premises, the building is destroyed by fire, the county is responsible in damages for its value.

2. —— *Cases Distinguished.* The cases of *Comm'rs of Marion Co. v. Riggs*, 24 Kan. 255, and *Lumber Co. v. Elliott*, 59 id. 42, 51 Pac. 894, distinguished.

Error from court of appeals, southern department; A. W. DENNISON, B. F. MILTON, and M. SCHOONOVER, judges. Opinion filed April 7, 1900. Reversed.

*For opinion by court of appeals, see 8 Kan. App. 850, 60 Pac. 1045.—REP.

*Milton Brown*, for plaintiff in error.

*M. G. Kelso*, and *Peters & Nicholson*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by L. E. Williams against the board of commissioners of Kearny county to recover damages for the negligent destruction of a building by fire, which the defendant had rented of the plaintiff and which it was occupying for court-house purposes. A verdict and judgment were rendered in plaintiff's favor, from which the defendant prosecuted error to the court of appeals. In addition to the verdict, the jury specially found that the fire which destroyed the building was caused by the negligence of the defendant in allowing combustible material to accumulate in unoccupied rooms, and in allowing unauthorized persons to enter and occupy the building. The court of appeals reversed the judgment of the district court ( 8 Kan. App. 850, 60 Pac. 1045 ), and from the judgment of reversal error has been prosecuted to this court.

Kearny county did not have a court-house, and to provide rooms for county purposes it leased a building from the plaintiff Williams for the term of one year, with the privilege of a renewal of the lease for an additional three years. The lease was in the usual form of such instruments between landlord and tenant, and contained the following covenants and stipulations :

"The said party of the second part further covenants with the said party of the first part, at the expiration of the time mentioned in this lease, to give peaceable possession of the said premises to the said party of the first part, in as good condition as they now are, the usual unavoidable accidents and loss by

fire, excepted ; and will not make or suffer any waste thereof, nor lease or make or suffer to be made, any alterations therein without the consent of the said party of the first part, in writing, having been first obtained, and not use or occupy said premises for any business or thing deemed extrahazardous on account of fire ; and that, upon the non-payment of the rent, as aforesaid, the said party may, at his election, either distrain for said rent or declare this lease at an end, and recover the same as if held by forcible detainer, and the said party of the second part hereby waiving any notice of such election or any demand for the possession of said premises.''

Sections 17 and 21, chapter 27, General Statutes of 1897 (Gen. Stat. 1899, §§ 1558, 1543), read as follows :

''SEC. 17. . . . *Third,* To purchase sites for and to build and keep in repair county buildings, and cause the same to be insured in the name of the county treasurer for the benefit of the county ; and in case there are no county buildings, to provide suitable rooms for county purposes. . . .''

''SEC. 21. Each county organized for judicial purposes shall at its own expense provide a suitable courthouse and a suitable and sufficient jail, and fire-proof offices and other necessary county buildings, and keep the same in repair.''

The above statutes are plain and do not require construction. Their provisions were enforced in *Comm'rs of Brown Co. v. Barnett*, 14 Kan. 627. There was, therefore, statutory authority to the board of commissioners to make a contract of rental of the plaintiff's building.

The claim of non-liability for the negligent destruction of the building is rested upon the common-law principle that *quasi*-public corporations such as counties, being mere agencies of the state for the exercise of the powers of the sovereignty possessed by it, are

not liable for the negligence of the officers through whom the powers are exercised. The cases of *Comm'rs of Marion Co. v. Riggs*, 24 Kan. 255, and *Lumber Co. v. Elliott*, 59 id. 42, 51 Pac. 894, are pressed upon us as conclusive upon the question. There is, however, a clear distinction between those and similar cases and the one now presented for consideration. In those cases the violated duty was public and general, not special and particular. It was a political and administrative duty, due alike to all individuals, not a contractual duty due to a single individual. The difference between the two kinds of cases may be illustrated thus : The board of commissioners owed to the general public the duty of preserving the county building and public records from destruction by fire. This duty sprang not from any compact or agreement made by it with the citizens of the county, but from its character as a public or political agency. On the other hand, it also owed to the plaintiff the duty of protecting his building from negligent destruction by fire, not, however, in his mere capacity as a citizen, but because of the contractual relation it assumed to him when it occupied his premises for its purposes, reenforced, perhaps, by the special agreement of lease entered into with him. It was authorized by the statute above quoted to enter into this relation, and also, as we think, to make this agreement.

The general rule is that public corporations upon which the state has imposed duties in the execution of its sovereign powers are not liable for negligence in the execution of such powers, because, being agencies of the sovereignty, they are, like the sovereignty itself, exempt from the obligation to respond to the demands of private suitors ; but if the duty in question has not been imposed, but has been voluntarily assumed for

the private behoof and advantage of the corporators, liabilities result as in the case of private corporations or individuals. Upon these principles has been founded the distinction between the liability of *quasi*-public corporations, such as counties, townships, school districts, etc., and municipal corporations proper, such as cities. The one class of corporations are agencies of the state upon which have been cast the responsibility of executing its political policies. Upon the other no duties have been imposed, but, on the contrary, privileges have been asked for and granted. An instructive case illustrating the essential difference between the responsibility of the two classes of public corporations is *City of Galveston v. Posnainsky*, 62 Tex. 118. Out of analogous principles, if not out of the very same ones, grows the responsibility of a county to respond in damages to one with whom it has entered into a private contract relation. The defendant in error voluntarily assumed the relation of lessee to the plaintiff in error. The fact that it was under the necessity of engaging rooms for county purposes from some one did not make its relation to its lessor any the less one voluntarily assumed — its contract with its lessor any the less that of a private agreement.

The defendant in error urges that the claim of liability against it must rest upon the covenants against waste, etc., contained in the lease, and that the statutory permission to provide suitable rooms for county purposes does not authorize the making of such covenants. In our judgment this contention is without force. Authority to contract with private persons for buildings for county purposes is an authority to enter into the ordinary agreements of lease. It is an authority to stipulate upon the same terms that private

individuals ordinarily stipulate for the occupancy of leased premises. But over and beyond this contention, and independently of any of the special covenants of the lease, the relation of landlord and tenant begat the obligation to care for the leased premises with ordinary prudence and carefulness, and begat the obligation to respond in damages for their negligent destruction. In *United States v. Bostwick*, 94 U. S. 53, 24 L. Ed. 65, a formal lease of certain premises to the United States was not executed, but it was held that certain correspondence between the lessor and the authorized government officials constituted a contract of rental for a year, with the privilege of a renewal for three additional years, and the ordinary liability of a tenant to respond for negligence in the use of the premises existed upon the part of the United States. The court in its opinion remarked:

"This being the case, the contract is one by which Mr. Lovett agreed to let, and the United States to hire, the premises described for the term of one year, with the privilege of three, at a rent of $500 a month, and without restriction as to the use to which the property might be put. The United States agreed to nothing in express terms, except to pay rent and hold for one year.

"But in every lease there is, unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to so use the property as not unnecessarily to injure it, or, as it is stated by Mr. Comyn, 'to treat the premises demised in such manner that no injury be done to the inheritance, but that the estate may revert to the lessor undeteriorated by the wilful or negligent conduct of the lessee.' (Com. Land. & Ten. 188.) This implied obligation is part of the contract itself, as much so as if incorporated into it by express language. It results from the relation of landlord and tenant between the parties which the contract creates. (*Holford v. Dun-*

*nett*, 7 M. & W. 352.)   It is not a covenant to repair generally; but to so use the property as to avoid the necessity for repairs, as far as possible.   (*Horsefall v. Mather*, 7 Holt, 9 ; *Brown v. Crump*, 1 Marsh. 569.)

"There are in this contract no stipulations to take the place of or in any manner restrict this implied obligation on the part of the United States growing out of their relation to the petitioner as his lessees. They had the free and unrestricted right to use the property for any and all purposes, but were bound to so conduct themselves in such use as not to cause unnecessary injury.   Whatever damages would necessarily result from the use for the same purpose by a good tenant must fall upon the lessor.   All that the relation of landlord and tenant implies in this particular is, that the tenant, while using the property, will exercise reasonable care to prevent damage to the inheritance.   His obligation rests upon the maxim, *sic utere tuo ut alienum non lædas*.   If he fails in this, he violates his contract, and must respond accordingly."

Questions as to the rulings of the district court upon a motion for change of venue and as to the measure of damages were raised by the defendant in error. Neither of them, however, is well founded.

The judgment of the court of appeals is reversed, and that of the district court is affirmed.