JOHNSON, RESPONDENT, *v.* CITY OF BILLINGS ET AL., APPELLANTS.

(No. 7,478.)

(Submitted January 15, 1936. Decided February 6, 1936.)

[54 Pac. (2d) 579.]

*Mr. George S. Smith,* for Appellant City of Billings, submitted an original and a reply brief and argued the cause orally.

464

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Enor K. Matson,* Assistant Attorney General, *Mr. C. W. Demel,* County Attorney, and *Mr. Philip Savaresy,* Assistant County Attorney,

for Appellant Yellowstone County, submitted a brief; *Mr. Matson* and *Mr. Savaresy* argued the cause orally.

466

*Mr. H. C. Crippen* and *Mr. H. C. Crippen, Jr.*, for Respond-
ent, submitted a brief; the former argued the cause orally.

468

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendants, city of Billings and county of Yellowstone, have appealed from a judgment against them and one James Steele, and in favor of Helen Johnson, plaintiff, for damages in the sum of $3,000 for injuries received when a truck driven by Steele collided with an automobile in which the plaintiff was riding. No question is raised as to plaintiff's right to recover or the liability of Steele, who is not appealing, but the city and county each contend that the court erred in refusing their several motions for judgment of nonsuit and directed verdict.

The pertinent facts adduced to establish liability or nonliability of the city and county are as follows: In 1933, the city of Billings and Yellowstone county entered into an agreement to construct, and commenced the construction of, a waste ditch to be known as ''the City-County Waste Ditch,'' to drain a portion of the west part of the city and, east thereof, the county road. Thereafter, an ''emergency'' was declared and federal aid secured; the work was taken over by the Civil Works Administration and prosecuted under the supervision and control of the administrator, using laborers from the relief roll, but the city and county furnished machinery, material and money in aid of the completion of the project. Neither the city nor the county paid any money to the other, but, by a system of bookkeeping, the expenditures of the two were equalized or balanced. The county received benefit from that portion of the ditch constructed east of what is designated ''Miller's corner,'' but not from that west of the corner. At the time of the accident mentioned, the eastern portion of the ditch was completed and work was progressing west of that corner, but the project was an entire one and, in so far as the city and county were taking part in the construction, their interests were joint.

At a point where the ditch was constructed west of the Miller corner, dirt had been "soiled" across the county road, necessitating the leveling of the road and its regraveling. This work was required to be done as a part of the ditch work and to be paid for out of the ditch fund, but was done by the county under the supervision of the county's road superintendent.

Steele was engaged in hauling gravel from the county's gravel pit to the point of repair at the time of the collision. He was regularly in the employ of the county, under the direction and control, and subject to discharge by, the county road superintendent; he was paid by the county, but the amount paid for this work was charged against the ditch account, to be offset by a corresponding expenditure by the city.

The general rule in this country and in England is that cities are liable for the negligence of their employees in the discharge of those public duties concerning the highways within the corporate limits, but that counties are not so liable in the absence of an express statute on the subject. The differentiation is based upon the declaration that the former voluntarily accept charters from the state to govern themselves and to manage their own affairs, and are, therefore, municipal corporations proper, while counties are created by law without consultation of the citizens within their boundaries, and are compelled to perform the duties of the state; these are quasi-municipal corporations. Nonliability is declared for the reason that counties are arms or branches of the state government and, as such, partake of or share in the sovereignty of the state and its attributes; consequently, as the sovereign cannot be sued without its consent, its arms or branches are likewise immune, unless liability is specifically imposed upon them by statute. (7 Cal. Jur. 388 and 518; 7 R. C. L. 954, and 13 R. C. L. 309; 4 Dillon on Municipal Corporations, 5th ed., sec. 2856; 6 McQuillin on Municipal Corporations, 2d ed., sec. 744; *Hughes* v. *County of Monroe*, 147 N. Y. 49, 41 N. E. 407, 39 L. R. A. 33.)

Recognizing the injustice of this rule, with respect to counties, many of the states have directly imposed liability by statute,

while in others the courts have sought to evade the rule by construction. Thus in Pennsylvania, while the rule is that the statute imposing liability must be specifically and definitely on the subject of such liability, the court has held that the statute imposing the duty upon counties to keep the highways in repair impliedly declares them liable for failure to perform this specific duty. (*Clark* v. *Allegheny County*, 260 Pa. 199, 103 Atl. 552; *McCormick* v. *Allegheny County*, 263 Pa. 146, 106 Atl. 203.) In Tennessee, the rule is discussed and recognized as applicable in cases of injury resulting from failure to keep the highways in repair, but where an injury resulted from the activity of county agents, as distinguished from neglect, it is held that by digging a trench or ditch at the side of the highway, the county created a nuisance and was liable to one injured by falling therein. It is declared that the creation of a nuisance is no part of sovereignty, and that "no individual, natural or legal, has a right to commit a nuisance to the injury of the public or individuals." (*Chandler* v. *Davidson County*, 142 Tenn. 265, 218 S. W. 222, 224.)

We are committed to the rule with respect to cities. (*Headley* v. *Hammond Building*, 97 Mont. 243, 33 Pac. (2d) 574, 93 A. L. R. 794; *Nord* v. *Butte Water Co.*, 96 Mont. 311, 30 Pac. (2d) 809; *Remesz* v. *City of Glasgow*, 95 Mont. 595, 28 Pac. (2d) 468; *O'Donnell* v. *City of Butte*, 65 Mont. 463, 211 Pac. 190, 32 A. L. R. 1284; Id., 72 Mont. 449, 235 Pac. 707.) And we have recognized a distinction between cities on which the legislature has conferred the power of local self-government and legislation which import "sovereignty," and counties, with respect to the power of the legislature to compel participation in state insurance. (*State ex rel. City of Missoula* v. *Holmes*, 100 Mont. 256, 47 Pac. (2d) 624, 100 A. L. R. 581.) But it will be noted that, in exercising the functions mentioned, it is there declared that the city is acting in its proprietary capacity, and anything herein said with regard to the right to sue a city so acting does not conflict with that opinion.

These declarations have been repeated, and we have held that, in maintaining a fire department, a city acts in its proprietary capacity, but it is declared that, while firemen are actually engaged in the performance of their duties as such, they act in a governmental capacity, and, on grounds of public policy and necessity, the city is not liable for their torts. (*State ex rel. Kern* v. *Arnold,* 100 Mont. 346, 49 Pac. (2d) 976, 100 A. L. R. 1071,)

It may be that, on the ground of public policy, we might hold that, ordinarily, in the repair of highways the county acts in its governmental capacity and should be immune from liability for the tortious acts of its servants in this regard, but that question will be shown to be not before us, and is specifically reserved.

Counsel for the defendant county assert that we are committed to the rule of the immunity of counties from suit and nonliability for damages for injuries inflicted, regardless of the capacity in which a county was acting at the time. Let us see whether this is so. In *Smith* v. *Zimmer,* 45 Mont. 282, 125 Pac. 420, 427, it is true Mr. Justice Smith said, ''The nonliability of the county itself rests upon an entirely different principle from that which is invoked in an attempt to show that the commissioners cannot be made to respond in damages personally,'' and Mr. Chief Justice Brantly, dissenting, used the phrase, ''The county is not liable.'' But the question of liability of a county was not before the court, and was not there decided. The action was against the commissioners and the road supervisor only.

On the theory that a county cannot be sued because a ''sovereign'' cannot be sued without its consent, we are not precluded from holding a county liable for the torts of its employees, for the legislature has specifically granted to counties the power to ''sue and be sued'' (sec. 4444, Rev. Codes 1921), and has provided that a suit against a county must be brought in that county (sec. 9095, Id.), which section is held to permit suits generally against a county. (*Good Roads Machinery Co.* v. *Broadwater County,* 94 Mont. 68, 20 Pac. (2d) 834.) Under

these statutes this court has recognized the right of citizens to sue a county on divers grounds of wrong committed (*Edwards* v. *Lewis and Clark County*, 53 Mont. 359, 165 Pac. 297; *Heckman* v. *Custer County*, 70 Mont. 84, 223 Pac. 916; *In re Claims of Hyde*, 73 Mont. 363, 236 Pac. 248; *Franzke* v. *Fergus County*, 76 Mont. 150, 245 Pac. 962; *Lewis* v. *Petroleum County*, 92 Mont. 563, 17 Pac. (2d) 60, 86 A. L. R. 575), but has never passed directly on liability for torts. The nearest approach to an authority on the subject in this state is the opinion in *Sullivan* v. *Big Horn County*, 66 Mont. 45, 212 Pac. 1105, wherein it is held that the above statutes do no more than create the capacity to sue and be sued, and have no greater effect, and that authority to maintain an action for damages for unlawful detainer, if it exists, must be found in the statute, and, not being there found, such an action will not lie, as it involves a penalty to be imposed for which the commissioners could not have allowed a claim, but that an action in ejectment would lie. It will be noted that the reason for not permitting such an action is not that on which the general rule is based, i. e., that the county is exempt from suit of any nature because it partakes of the sovereignty of the state.

While we accord cities certain attributes of sovereignty, not affecting the present case, this court went into the question of the "sovereignty" of a county at length, because it was then one of "first impression" in the state, in *Bignell* v. *Cummins*, 69 Mont. 294, 222 Pac. 797, 799, 36 A. L. R. 634, wherein it is declared that sovereignty must involve "the general interest of the state at large," and "is lodged in the political power which is created by and is the representative of all the people—the state itself"; therefore, "granting that the county is an arm of the sovereignty, an agent of the state, an auxiliary and necessary to the proper functioning of the state government, it must be conceded that the county is only a creature of the state," and that "the prerogative of the state may not be exercised by its creature in the absence of express authority granted to the creature." From this declaration it would seem that, in this

state, the rule should be that the county cannot exercise the prerogative of refusing to be sued for the tort of its agent, unless expressly granted that right by statute, rather than that it should not be sued unless the right to sue is granted by statute.

Granting that the general rule announced above has, in the past, been generally followed, it has, in its entirety, come in for rather drastic, and justifiable, criticism. First, as to the differentiation between cities and counties, it is correctly said: "The reason of the rule which, in many cases, charges a city * * * with liability and, under the same conditions of fact, exonerates a county, is artificial and is to be sought for in historical sources; it is not supported by legal reason or analogy." (5 Thompson on Negligence, 302.) The basis for the exemption of counties, originally, being lack of corporate existence and want of power to raise corporate funds, where counties are, by law, made public corporations and empowered to raise funds, "the reason for the rule ceases and the rule ought to fall with it; * * * it does not seem a sufficient answer to this argument to say that counties are political subdivisions of the state, for cities are political subdivisions * * * as fully as counties are, and in this respect, the keenest vision can discover no difference between the two classes of public corporations." (1 Elliott on Roads and Streets, 4th ed., sec. 599.)

It has been sought to justify the distinction on the theory of implied contract imposed upon cities by reason of their voluntary character, while that of counties is involuntary (*Weet* v. *Trustees of Village of Brockport*, 16 N. Y. 161, note), but this theory is fallacious; cities, like counties, "are a part of the machinery of the state. * * * Like counties, their functions, rights, and privileges are under the control of the legislature, and may be changed, modified, or repealed. * * * Like counties, they can sustain no right or privilege, or their existence, upon anything like a contract between them and the state, because there is not and cannot be any reciprocity of stipulation. * * * The duty of keeping in repair the public highways on their respective limits is imposed on both for the benefit of

the public, without any consideration or emolument received by either. Before the incorporation of the town or city, the county was charged with the duty of keeping its highways in repair. When the town or city becomes incorporated, that duty is transferred * * * from one governmenal agency to another." (*Arkadelphia* v. *Windham*, 49 Ark. 139, 4 S. W. 450, 4 Am. St. Rep. 32.)

It has been suggested that the difference in the rule results from the fact that county roads are constructed for the use of the state at large, while city streets serve but the people of the municipality, but this is only relatively so; not all county roads serve others than residents of the locality, and as to arterial highways, these pass through cities as well as counties.

The only further excuse for the differentiation we have been able to discover is the assertion that city streets are in more general use than rural roads, and cities have almost unlimited control over their streets and are more apt to have notice of defects, the officers more numerous, and necessity for vigilance greater than in the county, and it would be unjust to measure the duties of officers in charge of rural highways by the rules which govern those of cities. "What would be care and diligence on the part of one class of officers may often be culpable negligence on the part of officers of the other class." (See 1 Elliott on Roads and Streets, secs. 560, 561.) This discussion concerns the question of negligence, degree of care, the requirement of notice and the like, rather than constituting a difference.

Turning, then, to the reason for and the reasonableness of the rule exempting counties from liability for injuries on highways, it would seem that there is as little justification for the rule as there is for failing to include cities within its cloak of immunity. As heretofore indicated, it is based upon the common-law exemption of a county as an arm of the sovereign; yet the American "county" differs so radically from its counterpart in England, that it would seem, logically, that the rule of the English common law should never have been applied to questions arising with regard to our counties.

The Normans seem to have framed the county system, the "shires" of England, governed by the sheriff whose power was almost autocratic, truly an arm of the sovereign; while our counties are quasi-municipal corporations, organized for the purpose of enabling the *people* of a designated territory to control their local affairs, and "it seems that the American decisions which follow the English doctrine * * * have wandered somewhat from the true path, in as much as they have lost sight of the important fact that an American county is much more completely organized and possesses much more extensive powers with respect to local affairs than did the English shire or county. In following the English theory the courts have, in many instances, applied a rule to American counties that is not easy to sustain on solid principle." (1 Elliott on Roads and Streets, sec. 594.)

The rule was first announced in England in the case of *Russell* v. *Men of Devon*, 2 T. R. 677, and was based, not upon the theory that the county was an offspring of the sovereign, but upon the lack of a corporate fund, or means of securing it, for the payment of damages. From this case the rule above was evolved; its development is traced carefully in *Matsumura* v. *County of Hawaii*, 19 Hawaii, 18, where it is said: "This doctrine, so far from resting on 'historical' grounds, is the result of the gradual growth of error, which can be easily traced in the earlier American cases."

In rejecting this obsolete, if not erroneous, theory of nonliability, the supreme court of Wisconsin in *Young* v. *Juneau County*, 192 Wis. 646, 212 N. W. 295, 296, quoted from articles by Edwin M. Borchard, of the Yale Law School (34 Yale Law Journal, 1, 129, 226; 36 Yale Law Journal 1), as follows: "The reason for this long-continued and growing injustice (exemption of governments from liability for injuries to citizens) in Anglo-American law rests, of course, upon a medieval English theory that 'the King can do no wrong,' which, without sufficient understanding, was introduced with the common law into this country, and has survived mainly by reason of its

antiquity. The facts that the conditions which gave it birth and that the theory of absolutism which kept it alive in England never prevailed in this country, and have since been discarded by the most monarchial countries of Europe, have nevertheless been unavailing to secure legislative reconsideration of the propriety and justification of the rule that the state is not legally liable for the torts of its officers. To be sure, we profess to ease the conscience by according the injured individual an action against the wrongdoing officer—frequently a person without pecuniary responsibility—or else, under our decentralized system of administration, by permitting an action against political subdivisions * * * for injuries inflicted when acting in their 'private' or 'corporate' as distinguished from their 'governmental' capacities. * * * The difficulty, of course, lies in the fact that we consider ourselves bound by the fetters of a medieval doctrine, often regarded as having the institutional impregnability of an article of faith, which never had much, if any, justification, and that legislatures have been unwilling to re-examine the whole subject from the point of view of theory and history, in order to bring the law into harmony with the practical exigencies of modern life. * * * The community will gain by promoting respect among its members for its fairness and justice, and, instead of relying upon antiquated formulas to escape liability, it will meet the exigencies of modern organized life by discharging what the rest of the world recognizes as just obligations."

But is it necessary that the legislature act other than it has in this state to accomplish this purpose? We think not. It has granted the right to sue a county and has made the county responsible for keeping its roads in repair, and, as was said by the Wisconsin court in the last-cited case, "We see no reason in justice or morals why a group should not be liable to one to whom its agents have done injury when a member of the group would be liable if he had done the same injury to another member of the group. Multiplication of the number of those who are responsible for a wrong ought not to establish immunity."

478

The court there, however, recognized a distinction between acts done in a county's governmental and proprietary capacity.

Conceding, for the purpose of this opinion, that ordinarily the repair of, at least certain of, our highways constitutes a governmental function, it is not so with respect to the particular situation presented here. The city and county joined in the construction of a drain ditch for the benefit of both; a project which might have been initiated by the city for the preservation of the health and safety of the people (sec. 5039, subd. 15, Rev. Codes 1921), or by a county for the protection of its roads, for which purpose the county might have been included in a drain district and treated in the same manner as a private corporation (*State ex rel. Valley Center Drain District* v. *Board of Commrs. of Big Horn County,* 100 Mont. 581, 51 Pac. (2d) 635), but were acting each for the other as well as for itself, and the work being done on the road at the time of the accident was in progress, not under the mandate of the statute requiring counties to keep roads in repair, but as a necessary and proper part of the drain project thus jointly being completed. Clearly, in so repairing the road, the city and county were each acting in the proprietary, and not in the governmental, capacity.

We are not unmindful of the fact that the great weight of authority is in favor of total immunity of counties, but precedent not supported by logic or reason, or where the reason for the rule has ceased to exist, should be discarded as being both unjust and dangerous; a menace to good government. The tendency blindly to follow case law, regardless of existing reasons, as pointed out by Mr. Justice Scott of Colorado, places courts in the category of men who continue to follow the calf track, so graphically described in Sam Waller Foss' poem. (See *Van Kleeck* v. *Ramer,* 62 Colo. 4, at page 44, 156 Pac. 1108.)

Being unembarrassed by any former opinion of this court on the question directly before us for determination, we discard precedent and refuse to perpetuate the error of other courts throughout the Union; rather, we hold that, under the statutes of this state, with respect to the care of highways and liability

for injury thereon, counties and cities stand in the same relation to the traveling public in so far, at least, as injury results from some act of an agent of either while in the prosecution of an enterprise engaged in by either in its proprietary, as distinguished from its governmental capacity, which is as far as we need to go in this opinion. Supporting this conclusion, see the following cases: *Williams* v. *Board of Commrs. of Kearny County*, 61 Kan. 708, 60 Pac. 1046; *Bell* v. *City of Pittsburgh*, 297 Pa. 185, 146 Atl. 567, 64 A. L. R. 1542; *West* v. *Coos County*, 115 Or. 409, 237 Pac. 961, 40 A. L. R. 1362; *Whiteside* v. *Benton County*, 114 Wash. 463, 195 Pac. 519.

Speaking of the distinction between governmental and proprietary activities, it is said in the *Hawaii Case*, above: "It is true that the horse of a fire department trespassing on the plaintiff's lawn has been held to be doing so in a governmental capacity (*Cunningham* v. *Seattle*, 40 Wash. 59, 82 Pac. 143 [4 L. R. A. (n. s.) 629]), and that a city dump cart loaded with house ashes may run over pedestrians with impunity while one loaded with steam engine ashes might give a right of action (*Haley* v. *Boston*, 191 Mass. 291, 77 N. E. 888, 5 L. R. A. (n. s.) 1005), but these are merely the *reductio ad absurdum* of those cases which fail to observe limitations which have been frequently pointed out."

In Williams on Municipal Liability for Tort, page 114, it is said: "The immunity of a quasi corporation stands upon the ground, not that it is a governmental agency, but that its duty relative to highways is public and governmental; for though a governmental agency, it will be liable to a private action at common law at the suit of any person who may suffer special damage from the negligent performance of any duty that is not public and governmental in nature." At page 7 of this work it is said: "A quasi corporation may, however, by its own voluntary act, become something more than the mere governmental instrumentality that the state originally made it and intended it to be and may assume a new character. Such a change of character may be brought about, it seems, by the assumption

480

and performance of some special duty undertaken for its own private advantage, * * * with such a change in character comes also a change in the rule of liability, and such corporation is held to be responsible to the same extent as a municipal corporation proper under like circumstances." The cases cited in support of this text are not very satisfactory for the purpose; they have to do rather with the commission of unlawful acts by agents of the county; but in one Minnesota case cited it was held that the county was not liable for injury caused in constructing a drain ditch, for the reason that the work was done by an independent contractor, but it was indicated that the county would have been liable had it done the work itself (*Thompson* v. *Polk County,* 38 Minn. 130, 36 N. W. 267) ; the text, however, is in itself logical and reasonable, and appeals to our sense of justice.

We need go no further here than to hold that, as the repair of the highway was, of necessity, a part of the construction and completion of the drain ditch, prosecuted jointly by the city and county in their respective proprietary capacity, the cost thereof charged against the "ditch account," their liability was established and was joint and several. (*Trebowoski* v. *Town of Ringle,* 165 Wis. 637, 163 N. W. 165, 8 A. L. R. 1271.) In repairing the highway, the county was acting voluntarily and in its proprietary capacity, and not under the mandate of the statute to keep the highways in repair.

The city, however, asserts that it cannot be held liable in the instant case because the driver of the truck inflicting the injury was an employee of the county and not of the city, and therefore the city does not come within the rule of *respondeat superior,* the test of which is whether the actor was subject to the orders and control of the person sought to be charged, and subject to be discharged for disobedience or misconduct. (*Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, 152 Pac. 481, L. R. A. 1916D, 836; *Shope* v. *City of Billings,* 85 Mont. 302, 278 Pac. 826; *Ashley* v. *Safeway Stores, Inc.,* 100 Mont. 312, 47 Pac. (2d) 53.) This "test" is applicable in determining the liability of

individuals and private corporations, and, in some instances, to public corporations, but in others it is not applicable. (43 C. J. 938.) The test was applied in the *Shope Case,* supra, in determining that city employees loaned to an independent contractor were the servants of the contractor and not of the city. It was there held that where a city contracts for work the prosecution of which necessarily constitutes a defect in a street of such a nature as to render it dangerous to travel, the city as well as the contractor is liable for injuries resulting directly from the acts which the contractor is engaged to perform, but where the dangerous condition caused is wholly collateral to the contract work and results from the negligence of the contractor or his servants, the city is not liable. In the case at bar, had the accident been caused by refuse necessarily "soiled" across the highway, the city might be held liable under the first rule above, but the accident was caused by the negligence of the employee of the county, doing the work on behalf of both city and county, at a point distant from the situs of the work and only collateral thereto.

With reference to the applicability of the above "test" with respect to the liability of cities, the Supreme Court of the United States has said that: "When the question is, whether an individual is acting for himself or for another, the inquiry whether that other directed him to do the work and controlled its performance, and whether he promised to pay him for his service, may be important in determining that question. In a case like the one before us, where all the actors are in some form under the same authority, where all are created by the same legislature, and it is a question of the distribution of conceded power, these suggestions are unimportant." (*Barnes* v. *District of Columbia,* 91 U. S. 540, 546, 23 L. Ed. 440.) "And so, if in exercising a power of a private nature the corporation employs as an agency a public body which itself is not vested with independent power in respect to the particular matter, the corporation will be liable for the acts of such body," and, in exercising such power, the character of the tenure of office of

the agent, or the manner in which he is paid, does not affect the city's liability. (43 C. J. 942; *Wagner* v. *Portland,* 40 Or. 389, 67 Pac. 300; *Johnston* v. *Chicago,* 258 Ill. 494, 101 N. E. 960, Ann. Cas. 1914B, 339, 45 L. R. A. (n. s.) 1167; *Twist* v. *Rochester,* 37 App. Div. 307, 55 N. Y. Supp. 850; Id., 165 N. Y. 619, 59 N. E. 1131.)

Here, while the truck driver, by reason of whose negligence the accident occurred, was under the control of the county road superintendent, that official was completing the work in which the city, county and federal agency were engaged for the benefit of the city and county in their private or proprietary capacities, and, for the injury done, the city was liable with the county and the driver.

For the reasons stated, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied February 20, 1936.