HEISER, RESPONDENT, *v.* SEVERY ET AL, APPELLANTS

No. 8482

Submitted February 14, 1945. Dismissed March 19, 1945.

158 Pac. (2d) 501

Mr. R. V. Bottomly, Attorney General, and Mr. Fred Lay, First Assistant Attorney General, for the appellants.

Messrs. Frank T. Hooks and Edmund G. Toomey, Edgar M. Hall, Toomey, McFarland & Hall, of Helena, for the Respondent.

108

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an action of claim and delivery. It is captioned, ''William Heiser, Plaintiff, v. J. W. Severy, William C. Carpenter, A. C. Grande, Elmer Johnson and E. G. Vedova, as and being the duly appointed, qualified and acting Montana

State Fish and Game Commission, J. S. McFarland, as Montana State Fish and Game Warden, and Jack Thompson, as Deputy Game Warden, Defendants.''

The Attorney General of the state of Montana appeared for defendants and filed demurrers on their behalf. The demurrers were overruled and time was granted for the defendants to answer but they declined to plead further and their default was entered followed by judgment for plaintiff. This appeal is from that judgment.

Plaintiff's right to maintain this action depends upon whether the action is against the state of Montana or against individuals.

The complaint alleges: That plaintiff, a citizen of the United States and of the State of Montana, procured a hunting license for the year 1942 from the Montana State Fish and Game Commission; that on November 15, 1942, he owned and possessed a shotgun of the value of $50 with which he was hunting game birds in a field in Broadwater county, at which time and place ''the defendant Jack Thompson, as a deputy game warden for the State of Montana, acting under and pursuant to orders from the other defendants above named, and all of them, did wrongfully * * * seize and take said chattel from the possession of this plaintiff, with the intent and purpose of confiscating the same''; that ''thereafter the chattel was turned over to and came into the possession of the other defendants above named, as such officers, and that before the commencement of this action, to-wit: on or about the 17th day of November 1942, demand was made upon the defendant J. S. McFarland, as Montana State Fish and Game Warden, that he deliver said chattel over to plaintiff herein; that said defendant refused so to do and on the contrary still, unjustly and unlawfully, detains the same from this plaintiff'' and that ''plaintiff has been damaged by said unlawful detainer of said property in the sum of $50.''

The complaint further alleges that the seizure and taking of the gun from the possession of the plaintiff was ''wrongful and unlawful, and in violation of the Fifth Amendment, and Sec. 1

of the Fourteenth Amendment of the Constitution of the United States, and in violation of Sec. 14 of Article III of the Constitution of the State of Montana, and of the laws of Montana''; and ''that said chattel was not seized or taken for tax, assessment, or fine pursuant to statute, or seized under an execution of attachment against the property of the plaintiff nor held as a fine or forfeiture.''

Other than above stated, there are no allegations in the complaint as to the facts which led up to or occasioned the alleged seizure of plaintiff's gun. In determining the correctness of the trial court's ruling on the demurrers, the only facts that stand admitted are those properly pleaded in the complaint. On this appeal the court is limited to the ultimate facts pleaded and we may not go beyond the allegations of the complaint for the facts of the case.

The prayer is for ''judgment against the defendants herein as such officers for recovery of the possession of said chattel or for the sum of $50.00, the value thereof, in case delivery cannot be had, together with $50.00 damages and for costs of this action.''

It is elementary that a state cannot be sued in its own courts without its consent or be compelled against its will to discharge any obligation. Langford v. King, 1 Mont. 33; Fisk v. Cuthbert, 2 Mont. 593; State ex rel. Journal Pub. Co. v. Kenney, 9 Mont. 389, 24 Pac. 96; State ex rel. Robert Mitchell Furniture Co. v. Toole, 26 Mont. 22, 66 Pac. 496, 91 Am. St. Rep. 386, 55 L. R. A. 644; Mills v. Stewart, 76 Mont. 429, 247 Pac. 332, 47 A. L. R. 424; Johnson v. City of Billings, 101 Mont. 462, 54 Pac. (2d) 579; State ex rel. Freebourn v. Yellowstone County, 108 Mont. 21, 88 Pac. (2d) 6; Tongue River and Yellowstone River Irr. Dist. v. Hyslop et al, 109 Mont. 190, 96 Pac. (2d) 273; State v. Rathbone, 110 Mont. 225, 100 Pac. (2d) 86.

The state's immunity from suit extends to the boards, commissioners and agencies through which the state must act. See Berman v. Minnesota State Agricultural Society, 93 Minn. 125,

100 N. W. 732; Wilbrecht v. Babcock, 179 Minn. 263, 228 N. W. 916; Linder v. Foster, 209 Minn. 43, 295 N. W. 299; Gottschalck v. Shepperd, 65 N. D. 544, 260 N. W. 573; Nelson v. McKenzie-Hague Co., 192 Minn. 180, 256 N. W. 96, 97 A. L. R. 196; Ahern v. Iowa State Agricultural Society, 91 Iowa 97, 58 N. W. 1092, 24 L. R. A. 655; De Votie v. Iowa State Fair Board, 216 Iowa 281, 249 N. W. 429; De Votie v. Cameron, 221 Iowa 354, 265 N. W. 637; Lord & Polk Chemical Co. v. State Board of Agriculture, 111 N. C. 135, 15 S. E. 1032; 46 C. J. 1043; 23 Am. & Eng. Ency. 375; Throop, Public Officers, Secs. 713, 715, 736, Mechem Public Officers, Sec. 613.

"The state may and must commit the discharge of its sovereign political functions to agencies selected by it for that purpose. Such agencies, while engaged exclusively in the discharge of such public duties, do not act in any private capacity, but stand in the place of the state, and exercise its political authority." Berman v. Minnesota State Agricultural Society, supra.

In Johnson v. City of Billings, 101 Mont. 462, 54 Pac. (2d) 579, 580, this court said that "as the sovereign cannot be sued without its consent, its arms or branches are likewise immune, unless liability is specifically imposed upon them by statute."

"It is fundamental that a state cannot be sued in its own courts without its consent, and it is a further rule that a litigant will not be permitted to evade the general rule by bringing action against the servants or agents of the state to enforce satisfaction for claims." Wilson v. Louisiana Purchase Exposition Commission, 133 Iowa 586, 110 N. W. 1045, 1046, 119 Am. St. Rep. 646.

Wilbrecht v. Babcock et al., supra, was a suit against C. M. Babcock as State Commissioner of Highways and another. A demurrer was interposed on the grounds that the complaint failed to state a cause of action against the defendant Babcock in his official capacity as commissioner of highways. This contention was sustained by the supreme court of Minnesota which held that it was error for the trial court to overrule the demurrer.

Looney v. Stryker et al., 31 N. M. 557, 249 Pac. 112, 113, 50 A. L. R. 1404, was a suit against the members of the State Highway Commission. In that case the court said: "The allegations of appellant's complaint would bring him within the exceptions, were this a controversy solely between individuals, but here we have a suit against state officials which, in effect, is a suit against the state. The complaint alleges that 'this action is instituted against the above-named officials as such officials, and not in their individual capacity.' Mr. Pomeroy, in his work, supra, at section 1749, says: '* * * In determining whether the state is a party, the courts will look beyond the parties to the record and decide according to the real effect. "Where it is manifest upon the face of the record that the defendants have no individual interest in the controversy, and that the relief sought against them is only in their official capacity as representatives of the state, which alone is to be affected by the judgment or decree, the question then arising whether the suit is not substantially a suit against the state is one of jurisdiction." ' "

In Omes v. Department of Conservation of Louisiana et al., La. App., 187 So. 342, 343, the court said: "That the State of Louisiana or a political subdivision thereof cannot be sued, ex delicto, does not admit of argument and it seems to us equally clear that the action of the agents and employees of the Department of Conservation in destroying plaintiff's shrimp was a delict or tort. Plaintiff's counsel in referring to this action on the part of the agents of the Conservation Department characterizes it as 'wilful and malicious, premeditated and not in the exercise of an ordinary governmental function'. The unauthorized acts of a State Official are his individual acts for which he alone and not the State is responsible."

Sayers v. Bullar et al., 180 Va. 222, 22 S. E. (2d) 9, was an action for damages against employees of the state for tort arising from work being done by them for the state. The appellate court held that the immunity of the state from actions for tort extends to the state's agents and employees where they are acting legally within the scope of their employment. Of course the rule is

otherwise if they exceed their authority and go beyond the sphere of their employment or if they step aside from it. In such cases they no longer enjoy such immunity and become individually liable for their wrongful acts.

Great Northern Life Insurance Co. v. Read, 322 U. S. 47, 64 S. Ct. 873, 88 L. Ed. 428, was a suit brought against a state official as such through proceedings authorized by statute to compel such official to carry out, with state funds, the state's agreement to reimburse moneys illegally exacted under color or the state's power to tax. The court held that the suit was one against the state and clearly distinguishable from actions against a tax collector to recover a personal judgment for money wrongfully collected under color of state law.

Ford Motor Company v. Department of Treasury of the State of Indiana et al., 1945, 65 S. Ct. 347, 350, 89 L. Ed. 389, an action brought against state officials as such, holds that such suit was a suit against the state which requires its consent. For the want of such consent, the United States Supreme Court ordered the complaint dismissed, saying in its opinion:

"Where relief is sought under general law from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally. Atchison, T. & S. F. R. Co. v. O'Connor, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; cf. Matthews v. Rodgers, 284 U. S. 521, 528, 52 S. Ct. 217, 220, 76 L. Ed. 447. Where, however, an action is authorized by statute against a state officer in his official capacity and constituting an action against the state, the Eleventh Amendment operates to bar suit except in so far as the statute waives state immunity from suit. Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Great Northern Life Insurance Co. v. Read, 322 U. S. 47, 64 S. Ct. 873 [88 L. Ed. 428].

"We are of the opinion that petitioner's suit in the instant case against the department and the individuals as the board constitutes an action against the State of Indiana. * * * It is

true the petitioner in the present proceeding joined the Governor, Treasurer and Auditor of the state as defendants, who 'together constitute the Board of Department of Treasury of the State of Indiana.' But, they were joined as the collective representatives of the state, not as individuals against whom a personal judgment is sought. The petitioner did not assert any claim to a personal judgment against these individuals for the contested tax payments. The petitioner's claim is for a 'refund,' not for the imposition of personal liability on individual defendants for sums illegally exacted. We have previously held that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. Ex parte Ayers, 123 U. S. 433, 490, 499, 8 S. Ct. 164, 174, 175, 31 L. Ed. 216; Ex parte State of New York, 256 U. S. 490, 500, 41 S. Ct. 588, 590, 65 L. Ed. 1057; Worcester County Trust Co. v. Riley, 302 U. S. 292, 296, 298, 58 S. Ct. 185, 186, 187, 82 L. Ed. 268. And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. Smith v. Reeves, supra; Great Northern Life Insurance Co. v. Read, supra. We are of the opinion, therefore, that the present proceeding was brought in reliance on Sec. 64-2614(a) and is a suit against the state.''

The statutory action of claim and delivery is founded upon a tortious detention of personal property. It lies to recover the possession of chattels wrongfully detained. It partakes of the nature of the common-law action of replevin in that it contemplates the recovery of specific property claimed, when possible. It also partakes of the nature of the common-law action of trover in that it allows for the recovery of the value of the property claimed where such property is not or can not be returned. The judgment is in the alternative and provides for the return of the chattel or, in the event it is not returned, for its value and also for damages for its tortious detention. Claim and delivery, like trover or replevin, is an action ex delicto.

The judgment in the instant case provides that the plaintiff have and recover from the defendants the possession of the shotgun, "and in case delivery of said gun cannot be had, then the plaintiff have and recover of the defendants the sum of Fifty Dollars ($50.00), the value of said gun, and that the plaintiff also have and recover damages in the sum of Fifty Dollars ($50.00) against said defendants for the retention of said property by them, together with his costs herein taxed at Fourteen and 92/100 Dollars ($14.92)."

The defendants were not sued in their individual capacity nor does the plaintiff claim that he has a personal judgment against them. In his brief, plaintiff concedes that the defendants "were sued in their capacity as members of the Commission, rather than as individual citizens." He also states therein that he made certain amendments, by interlineation in the complaint, "to more definitely show that the defendants were sued in their official capacity, as members of said Commission, rather than as individuals." In his prayer, "plaintiff prays judgment against the defendants herein as such officers." He contends that judgment for damages and costs which he obtained may be satisfied by payment out of moneys deposited in the state treasury to the credit of the state fish and game fund, asserting that since such moneys come from such special fund rather than out of the state general fund "any damages assessed against the Fish and Game Commission and the members thereof would not become a liability against the state funds." Plaintiff urges "that a suit on a claim for damages, due to the wrongful acts of the Fish and Game Commission, or the members thereof, or its appointees, in attempting to perform their duties under the Fish and Game Commission Law in an unconstitutional manner, is not a suit against the state requiring its consent, as the state's assets, or its general fund, cannot be reached in the collection of such a claim, if established."

We find no merit in these contentions other than in the statement that the state's assets may not be applied to the payment of plaintiff's claim.

The ownership of the wild animals of the state is in the state. The state holds such ownership in its sovereign capacity for the use and benefit of the people generally. The wild life of the state is one of its most prized and valuable assets. To conserve, protect and propagate such wild life the state has created the Montana State Fish and Game Commission which is a state agency under the control of the state. By statute the state has charged the commission with ''supervision over all the wild life, fish, game, and non-game birds, and water-fowl, and the game, and fur-bearing animals of the State.'' Chapter 157, Laws of 1941, section 3653. To finance the work of the commission and enable it to function, the state has provided for the creation of the ''state fish and game fund'' into which is paid moneys received from the sale of hunting and fishing licenses or permits, from the sale of seized game or hides, from fines and damages collected for violations of the fish and game laws of this state and from the appropriation made by the state legislature for the use and purposes of the commission. The moneys derived from such sources and paid into the state treasury all belong to and are the property of the state, and they may not lawfully be used to pay for the torts committed by officers, or employees of the commission, for which such officers or employees are personally liable as individual wrongdoers. Such moneys may not be paid out of the state treasury except for the purposes and in the manner authorized by law. None of it may be disbursed by the commission except ''pursuant to existing laws.'' Section 3669, Revised Codes.

Section 3670, Revised Codes, in part provides: ''All sums collected or received from the sale of hunting and fishing licenses or permits, from the sale of seized game or hides, or from fines, damages collected for violations of the fish and game laws of this state, from the appropriations, or received by the commission from any other source, shall be turned over to the state treasurer, and placed by him in a special fund known and designated as the 'state fish and game fund,' * * *.''

Section 3672, Revised Codes, in part provides: ''All salaries,

per diem, expenses and claims incurred by the state fish and game commission, or any person appointed or employed by them, shall be allowed by the state board of examiners, upon the presentation of proper vouchers therefor, and shall be paid out of the state fish and game funds, upon warrants properly drawn thereon; * * *."

To obtain moneys from the state fish and game fund to pay plaintiff's claim based on his judgment would require presentation to and allowance of the claim by the state board of examiners and a proper state warrant drawn on the state fish and game fund therefor (Section 3672, Revised Codes), hence it is idle to suggest that the moneys in the state fish and game fund are not an asset of the state or that the present suit is not an action against the state.

"The rule is well settled that the state, unless it has assumed such liability is not liable for injuries arising from the * * * tortious acts or conduct of any of its officers, agents, or servants, committed in the performance of their duties." 49 Am. Jur. Sec. 76, p. 288, citing Mills v. Stewart, 76 Mont. 429, 247 Pac. 332, 47 A. L. R. 424.

"Suits against state officers to recover, or direct the disposition of, property in the possession of the state are generally regarded as suits against the state." 49 Am. Jur., Sec. 93, p. 307.

This is an action ex delicto against the state to which the state has not consented. The state is immune from such suits and the complaint fails to state a cause of action. It follows therefore that the trial court erred in overruling the demurrers. Wilbrecht v. Babcock et al., supra; Looney v. Stryker et al., supra; Omes v. Department of Conservation of Louisiana et al., supra; Sayers v. Bullar et al., supra; Ford Motor Co. v. Department of Treasury of the State of Indiana et al., supra.

The judgment is reversed and the cause remanded with directions to sustain the demurrers and dismiss the complaint.

Mr. Chief Justice Johnson and Associate Justice Cheadle, concur.

Mr. Justice Angstman (concurring in part of the result and dissenting in part).

I concur in the result announced in the foregoing opinion so far as it affects the right of plaintiff to collect damages. I do so upon the ground that in my opinion the allegation as to damages should have been stricken from the complaint. The allegation was as follows, "That plaintiff has been damaged by the said unlawful detainer of said property in the sum of $50.00." Defendants moved to strike that allegation as a conclusion and not the pleading of any fact. I think that allegation should have been stricken. Section 8689 provides for the measure of damages in case of conversion of personal property. It provides:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"1. The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and,

"2. A fair compensation for the time and money properly expended in pursuit of the property."

The only elements of damages recognized aside from the value of the property are those set forth in paragraph 2 of the statute and these are elements of special damages which can never be recovered unless pleaded as such. Solberg v. Sunburst Oil & Gas Co., 73 Mont. 94, 235 Pac. 761; Campbell v. Post Pub. Co., 94 Mont. 12, 20 Pac. (2d) 1063; Brown v. Ind. Pub. Co., 48 Mont. 374, 138 Pac. 258.

I concede the rule that the state cannot be sued without its consent. I do not believe that this action in legal effect so far as it seeks return of the gun alleged to have been unlawfully and wrongfully taken from plaintiff is one against the state of Montana. In determining whether the action is against the state, the courts are not concluded by the parties named of record, but the courts will look to the essential nature of the action and

will ascertain what effect, if any, the judgment sought will have upon the rights and interests of the state.

"Generally speaking, it is the nature of the suit or relief demanded which the courts consider in determining whether a suit against a state officer is in fact one against the state within the rule of immunity of the state from suit." 49 Am. Jur., p. 307.

This action is merely against the defendants as state officers. Plaintiff relies upon the rule stated in 59 C. J. 310, as follows: "As is sometimes pointed out in the cases, suits, such as those mentioned in the preceding section, wherein it is sought to compel defendant officially to perform an obligation, or refrain from action, which is that of the state in its political capacity, are clearly distinguishable from suits against officers or agents personally, because, while claiming to act officially, they have committed or they threaten to commit wrong or injury to the person or property of plaintiff, either without right and authority or under color of an unconstitutional statute. Although defendant may assert that he acted officially, and on behalf of the state, a suit of this latter class is not a suit against the state, whether it be brought to recover property wrongfully taken or held by defendant on behalf of the state; to recover damages; for an injunction; or to compel an officer to obviate the effect of an illegal act."

The same rule is stated in 49 Am. Jur., p. 308, as follows: "An action or suit brought against a state officer in his official capacity is not a suit against a state which is forbidden by law unless express consent of the state is duly given where the action is for relief against statutes claimed to be unconstitutional, or is instituted against such officer to compel performance of a duty required of him by statute. Nor does the immunity of the state from suit relieve an officer of the state from responsibility when he acts tortiously on the rights of an individual, or in excess or violation of his authority, even though he acts or assumes to act under the authority and pursuant to the directions of the state. An action may be maintained against a state officer who unlawfully withholds property of another, or who

unlawfully deprives a citizen of his property or prevents his free enjoyment of it. This rule applies where rights are conferred by statute and the officer violates or abuses his authority under the statute to the injury of rights conferred thereby.''

In the case of Stockton v. Morris & Pierce, 172 Tenn. 197, 110 S. W. (2d) 480, 482, a replevin action, the court pointed out that a suit against state officers attacking the constitutionality of a statute is not a suit against the state and quotes with approval from a prior case the following: ''First, to quote from the opinion of Caldwell, J., in Insurance Co. v. Craig [106 Tenn. 621, 62 S. W. 155], above cited, 'This is not a suit against the state eo nomine, nor is it a suit against an officer of the state in such sense and for such purpose as to be within the inhibition of the statute. It is a suit against the officer of the state, the defendant being that state's official representative, * * * but it is not brought ''with a view to reach the state, its treasury, funds, or property,'' and consequently is not of the inhibited class.' This language is even more directly applicable in the instant case than to the facts of the case in which it was employed. This suit in replevin seeks to recover possession of property of the plaintiffs below to which neither the state nor its employees assert any claim of ownership or of possession, except the right of confiscation.''

To the same effect is Century Distilling Co. v. Defenbach, 61 Idaho 192, 99 Pac. (2d) 56, 59, where the court said: ''It is generally held by the courts, both state and federal, that where the action taken or threatened by an officer, is alleged to be in violation of the complainant's rights, either because of a misconstruction or misapplication by the officer of a statute, or on account of the alleged unconstitutionality of the statute, the action is not in fact one against the state but is rather against the individual because of his lack of power and authority to do the thing complained of.''

The situation here so far as the question of immunity is concerned is the same as if defendants had been sued in their individual capacities and attempted to defend on the ground that

they seized the gun and are holding it as officers of the state. That would not make them immune from suit.

In United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 257, 27 L. Ed. 171, the court said: ''This examination of the cases in this court establishes clearly the result: that the proposition that when an individual is sued in regard to property which he holds as officer or agent of the United States, his possession cannot be disturbed when that fact is brought to the attention of the court, has been overruled and denied in every case where it has been necessary to decide it, and that in many others where the record shows that the case as tried below actually and clearly presented that defense, it was neither urged by counsel nor considered by the court here, though, if it had been a good defense, it would have avoided the necessity of a long inquiry into plaintiff's title and of other perplexing questions, and have quickly disposed of the case. And we see no escape from the conclusion that during all this period the court has held the principle to be unsound, and in the class of cases like the present, represented by Wilcox v. Jackson [13 Pet. 498, 38 U. S. 498, 10 L. Ed. 264], Brown v. Huger [62 U. S. 305, 21 How. 305, 16 L. Ed. 125], and Grisar v. McDowell [73 U. S. 363, 6 Wall 363, 18 L. Ed. 863], it was not thought necessary to re-examine a proposition so often and so clearly overruled in previous well-considered decisions.'' And see Gladding v. Atchison, 44 R. I. 69, 115 A. 423, and Sterling v. Constantin, 287 U. S. 378, 53 S. Ct. 190, 77 L. Ed. 375.

The limitation upon the immunity rule was well pointed out in State Mineral Lease Commission v. Lawrence, 171 Miss. 442, 157 So. 897, 898, where the court said:

''But the rule applies only when the state or its subdivision is actually made a party upon the record, or is actually necessary to be made a party in order to furnish the relief demanded by the suit. It does not apply when the suit is against an officer or agent of the state, and the relief demanded by the suit requires no affirmative official action on the part of the state nor the affirmative discharge of any obligation which belongs to

the state in its political capacity, even though the officers or agents who are made defendants disclaim any personal interest in themselves and claim to hold or to act only by virtue of a title of the state and as its agents and servants.

"Thus it will be found, as illustrative of what has been above said, that nearly all the cases, wherein the rule of immunity from suit against the state, or a subdivision thereof, has been applied and upheld, are those which demanded a money judgment, and wherein the discharge of the judgment, if obtained, would require an appropriation or an expenditure therefrom, which being legislative in its character is a province exclusively of the political departments of the state. And in the less frequent number of cases where no money judgment is demanded, and the rule of immunity is still upheld, it will be found in them that the relief demanded would be, nevertheless, to require of the state or its political subdivision the affirmative performance of some asserted obligation, the nature of which, and the process of its discharge, belong to the state in its political capacity.

"When, therefore, officers or agents of the state, although acting officially and not as individuals, seize the private property of a citizen, the state having no valid right or title thereto, or trespass upon that property or damage it, the jurisdiction of the courts to eject the officers or agents, or to enjoin them from further trespass or damage, in a suit by the owner against the officers or agents, is as well settled in the jurisprudence of this country as is the general rule first above mentioned; for in such a suit no relief is demanded which requires any affirmative action on the part of the state. Such a suit is only to the end that the officers and agents of the state stay off the private property of the citizen and cease to damage that property, the state having no right or title thereto."

In Thompson v. Auditor General, 261 Mich. 624, 247 N. W. 360, 362, the court stated: "Actions or suits against individuals who are officers of the state, to recover property, compel the performance of a duty, and prevent a wrongful deprivation of

rights are not suits against the state, within the meaning of the Eleventh Amendment to the Constitution of the United States.'' And see to the same effect Dunne v. State, 162 Md. 274, 159 A. 751.

The case of Alfred v. Esser, 91 Colo. 466, 15 Pac. (2d) 714, 715, is very similar to this. The action was brought against Alfred and others as the State Board of Live Stock Commissioners. The action was for damages for conversion. It was alleged that the defendants sold certain cattle belonging to plaintiff and failed to account to him for the proceeds. The same contention was made there as here. The court in deciding the question said: ''The action is not against the state in its sovereign capacity to recover damages for the negligence or misconduct of its officers, and cannot be held to come within the well-recognized rule that a state may not be held liable for the negligence or fraud of its officers. It is an action against an agency of the state, not to recover money owned by the state, but to recover the proceeds of a sale of steers properly belonging to the plaintiff and illegally held by such agency. Accordingly we hold that the action as pleaded is maintainable.'' Here the allegation is that defendant, ''Jack Thompson, as a deputy game warden for the State of Montana, acting under and pursuant to orders from the other defendants above named, and all of them, did wrongfully and unlawfully, and in violation of the Fifth Amendment, and Sec. 1 of the Fourteenth Amendment, to the Constitution of the United States, and in violation of Secs. 14 and 27 of Article III of the Constitution of Montana and of the laws of the State of Montana, seize and take said chattel from the possession of this plaintiff, with the intent and purpose of confiscating the same.'' Such allegations have been held sufficient to raise the question of the constitutionality of the acts complained of as against the contention that they are conclusions of law not admitted by demurrer. Perkins v. Coffin, 84 Conn. 225, 79 A. 1070, Ann. Cas. 1912C, 1188.

It seems to me clear that defendants as officers of the state cannot hide behind the immunity rule and thus deprive plaintiff

of the gun which for the purpose of the demurrer is admittedly detained by defendants wrongfully and unjustly.

The judgment so far as the return of the gun is concerned will affect no right or interest of the state.

I think the judgment should be affirmed so far as it directs delivery of the gun.

Mr. Justice Morris:

I concur in the above opinion by Mr. Justice Angstman.

## ON PETITION FOR REHEARING

MR. JUSTICE ADAIR delivered the opinion of the court.

William Heiser sued the five members constituting the Montana State Fish and Game Commission, the State Fish and Game Warden and Jack Thompson, a deputy State Fish and Game Warden, in their official capacity as public officers of the State of Montana and not as individual citizens. In his complaint Heiser states that on November 15, 1942, he owned a 12-gauge shotgun which he was using in hunting game birds in Broadwater county and that Jack Thompson, as a deputy game warden for the State of Montana, acting pursuant to orders from the members of the Commission and from the State Fish and Game Warden, wrongfully seized and took the gun from him with the intent and purpose of confiscating it. Heiser asked for and he was awarded judgment against the members of the Commission, the State Fish and Game Warden and his deputy in their official capacity as public officers and not as individual citizens for the recovery of the shotgun or for $50 as its value together with $50 damages for detaining the gun and $14.92 costs.

Heiser looks to the State Fish and Game Fund for the money to pay the damages and costs awarded in the aforesaid judgment. If Heiser has been wronged by any member of the Commission or by the State Fish and Game Warden or a deputy, he has his remedy against such person or persons individually. But the fact that such individuals are public officers most certainly does not make the sovereign State of Montana

126

answerable for their private wrongs. If Heiser's gun is wrongfully detained by any of the individuals named, Heiser has his right of action against such individuals for the recovery of his property. But the State of Montana is not liable in damages to Heiser nor may the funds belonging to the state and deposited in the State Fish and Game Fund be used to pay the damage occasioned by private wrongs committed by public officers of the state.

It matters not whether the claim is paid from the State Fish and Game Fund or from the State General Fund, the moneys therein are equally the property and assets of the state and, in the absence of legislative authority therefor, they cannot be used to pay for the private wrongs committed by the public officers of the state. ''Public officers, when acting in good faith within the scope of their authority, are not liable in private actions * * *. When a public officer goes outside the scope of his duty, he is not entitled to protection on account of his office, but is liable for his acts like any private individual.'' 46 C. J. Secs. 326, 327, pp. 1042, 1043. It is the individual who must respond for his torts and not the state.

The petition for rehearing is denied. Remittitur forthwith.

Mr. Chief Justice Johnson and Associate Justice Cheadle concur.

Associate Justices Angstman and Morris dissent.